# 14-3376

---

IN THE

# United States Court of Appeals

## FOR THE SECOND CIRCUIT

* * * * *

UNITED STATES OF AMERICA,

*Appellee,*

- against -

JOSEPH VALERIO,

*Defendant-Appellant.*

* * * * *

*On Appeal from the United States District Court
for the Eastern District of New York (Central Islip)*

---

## JOINT APPENDIX

---

Ameet B. Kabrawala,
   Assistant United States Attorney
U.S. Attorney's Office for the
   Eastern District of New York
271 Cadman Plaza East
Brooklyn, NY 11201
Telephone No.: (718) 254-6076
Attorney for Appellee

Leonard Lato, Esq.
35 Arkay Drive, Suite 200
Hauppauge, NY 11788-3756
Telephone No.: (631) 655-5008
Attorney for Defendant-Appellant

# TABLE OF CONTENTS

**Page**

District Court Docket Entries . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   J.A.  1

Transcript of Bail Hearing before
   the Honorable Joseph F. Bianco on March 21, 2014 . . . . . . . . . . .   J.A. 11

Transcript of Bail Hearing before
   the Honorable Joseph F. Bianco on August 26, 2014 . . . . . . . . . . .   J.A. 45

Second Superseding Indictment, filed April 19, 2014 . . . . . . . . . . .   J.A. 64

Order of the Honorable Joseph F. Bianco
   Denying Bail, dated September 8, 2014 . . . . . . . . . . . . . . . . . . . . .   J.A. 83

Notice of Appeal, dated September 7, 2014 . . . . . . . . . . . . . . . . . . .   J.A. 84

# J.A. 1

## U.S. District Court
## Eastern District of New York (Central Islip)
## CRIMINAL DOCKET FOR CASE #: 2:14-cr-00094-JFB-1

Case title: USA v. Valerio            Date Filed: 02/26/2014
Magistrate judge case number: 2:14-mj-00080-WDW

Assigned to: Judge Joseph F. Bianco

**Defendant (1)**

| | |
|---|---|
| **Joseph Valerio** | represented by **Anthony M. LaPinta** |
| | Reynolds, Caronia, Gianelli, Hagney, |
| | LaPinta & Hargraves |
| | 35 Arkay Drive |
| | P.O. Box 11177 |
| | Hauppauge, NY 11788 |
| | 631-231-1199 |
| | Fax: 631-231-1344 |
| | Email: LaPintaEsq@aol.com |
| | *LEAD ATTORNEY* |
| | *ATTORNEY TO BE NOTICED* |
| | *Designation: Retained* |
| | |
| | **Leonard Lato** |
| | Lato & Baker |
| | 320 Carleton Avenue |
| | Central Islip, NY 11722 |
| | 631-761-5960 |
| | Fax: 631-761-5961 |
| | Email: leonardlato@yahoo.com |
| | *ATTORNEY TO BE NOTICED* |

| **Pending Counts** | **Disposition** |
|---|---|
| 18:2251(a), 2251(e), 2 and 3551 et seq. SEXUAL EXPLOITATION OF CHILDREN; 18:2253; 21:853(p) FORFEITURE ALLEGATION AS TO COUNT ONE (1) | |
| 18:2251(a),2251(e), 2 and 3551 et seq. SEXUAL EXPLOITATION OF CHILDREN Forfeiture allegations 18:2253; 21:853p (1s) | |

18:2251(e) and 3551 et seq. SEXUAL
EXPLOITATION OF CHILDREN
FORFEITURE ALLEGATION: 18:2253,
21:853(p)
(1ss)

18:2251(C), 2251(e), 2 and 3551 et seq.
SEXUAL EXPLOITATION OF
CHILDREN; 18:2253; 21:853(p)
FORFEITURE ALLEGATION AS TO
COUNT TWO
(2)

18:2251(c),2251(e), 2 and 3551 et seq.
SEXUAL EXPLOITATION OF
CHILDREN Forfeiture allegations
18:2253; 21:853p
(2s)

18:2251 (a), 2251(e) 2 and 3551 et seq.
SEXUAL EXPLOITATION OF
CHILDREN FORFEITURE
ALLEGATION: 18:2253, 21:853 (p)
(2ss)

18:2252(a)(1), 2252(b)(1), 2 and 3551 et
seq. TRANSPORTATION OF CHILD
PORNOGRAPHY; 18:2253; 21:853(p)
FORFEITURE ALLEGATION AS TO
COUNT THREE
(3)

18:2252(a)(1), 2252(b)(1), 2 and 3551 et
seq. SEXUAL EXPLOITATION OF
MINORS Forfeiture allegations 18:2253;
21:853p
(3s)

18:2251(c), 2251(e), 2 and 3551 et seq.
SEXUAL EXPLOITATION OF
CHILDREN FORFEITURE
ALLEGATION: 18:2253, 21:853 (p)
(3ss)

18:2252(a)(2), 2252(b)(1), 2 and 3551 et
seq. RECEIPT OF CHILD
PORNOGRAPHY; 18:2253; 21:853(p)
FORFEITURE ALLEGATION AS TO
COUNT FOUR
(4)

18:2252(a)(2), 2552(b)(1), 2 and 3551 et
seq SEXUAL EXPLOITATION OF
MINORS Forfeiture allegations 18:2253;
21:853p

# J.A. 3

(4s)

18:2251(a)(1), 2251(b)(1), 2 and 3551 et seq. SEXUAL EXPLOITATION OF MINORS FORFEITURE ALLEGATION: 18:2253, 21:853 (p)

(4ss)

18:2252(a)(4)(B), 2252(b)(2), 2 and 3551 et seq. POSSESSION OF CHILD PORNOGRAPHY; 18:2253; 21:853(p) FORFEITURE ALLEGATION AS TO COUNT FIVE

(5)

18:2551(a), 2251(e) and 3551 et seq. SEXUAL EXPLOITATION OF CHILDREN Forfeiture allegations 18:2253; 21:853p

(5s)

18:2252(a)(2), 2251 (b)(1), 2 and 3551 et seq. SEXUAL EXPLOITATION OF MINORS FORFEITURE ALLEGATION: 18:2253, 21:853 (p)

(5ss)

18:2252(a)(4)(B), 2252(b)(2) and 3551 et seq SEXUAL EXPLOITATION OF MINORS Forfeiture allegations 18:2253; 21:853p

(6s)

18:2251(e), 2 and 3551 et seq. SEXUAL EXPLOITATION OF CHILDREN FORFEITURE ALLEGATION: 18:2253, 21:853 (p)

(6ss-14ss)

18:2251(a), 2251(e), 2 and et seq. SEXUAL EXPLOITATION OF CHILDREN - FORFEITURE ALLEGATION 18:2253, 21:853(p)

(15ss)

28:3352 (a)(4)(B), 2252 (b)(2) and 3551 et seq. SEXUAL EXPLOITATION OF MINORS FORFEITURE ALLEGATION 18:2253, 21:853(p)

(16ss)

## **Highest Offense Level (Opening)**

Felony

# J.A. 4

**Terminated Counts**                                             **Disposition**

None

**Highest Offense Level (Terminated)**

None

**Complaints**                                                    **Disposition**

18:2251.F

---

**Plaintiff**

USA                                    represented by  **Allen Lee Bode**
United States Attorneys Office
Eastern District of New York
610 Federal Plaza
Central Islip, NY 11722
631-715-7828
Fax: 631-715-7922
Email: allen.bode@usdoj.gov
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Ameet B. Kabrawala**
United States Attorney's Office
Eastern District of New York
271 Cadman Plaza East
Brooklyn, NY 11201
718-254-6001
Fax: 718-254-6076
Email: ameet.kabrawala@usdoj.gov
*ATTORNEY TO BE NOTICED*

| Date Filed | # | Docket Text |
|---|---|---|
| 01/28/2014 | 1 | COMPLAINT as to Joseph Valerio (1). (Gandiosi, Kristin) [2:14-mj-00080-WDW] (Entered: 02/03/2014) |
| 01/28/2014 | 2 | Minute Entry for proceedings held before Magistrate Judge William D. Wall:Arraignment as to Joseph Valerio (1) Count Complaint held on 1/28/2014. Defendant Joseph Valerio present in custody with retained Counsel Anthony LaPinta Present. AUSA Lara Gatz present for the Government. Donna Mackey present for pretrial. Case called. Counsel for all sides present. Preliminary Hearing is waived. Permanent Order of Detention is entered. (Tape #3:28-3:31.) (Gandiosi, Kristin) [2:14-mj-00080-WDW] (Entered: 02/03/2014) |
| 01/28/2014 | 3 | ORDER OF DETENTION as to Joseph Valerio. Ordered by Magistrate Judge William D. Wall on 1/28/2014. (Gandiosi, Kristin) [2:14-mj-00080-WDW] (Entered: 02/03/2014) |

# J.A. 5

| | | |
|---|---|---|
| 02/03/2014 | 4 | Minute Entry for proceedings held before Magistrate Judge A. Kathleen Tomlinson:Bond Hearing as to Joseph Valerio held on 2/3/2014. Appearances: for Government: Lara Gatz for Allen Bode; for Defendant: Tony LaPinta (Ret); Court Reporter: Paul Lombardi; Pretrial: Donna Mackey; defendant present in custody. Government application to have their argument presented tomorrow. Application granted. Defendant presents his argument. Three suretors present in courtroom to sign bond. Court review conditions and advises risks of signing bond. Suretors acknowledge and sign bond understanding that no final decision will be rendered in defendant's release until tomorrow's continued bail hearing. Bail hearing to continue on 2/4/2014 at 12:30 p.m. before Magistrate Judge Tomlinson. Defendant remains in custody.(FTR: 1:03-1:37.) (Ryan, Mary) [2:14-mj-00080-WDW] (Entered: 02/20/2014) |
| 02/03/2014 | 8 | Letter to Judge Tomlinson in Support of Mr. Valerio's bail application by defendant's attorney, Mr. LaPinta. (Ryan, Mary) [2:14-mj-00080-WDW] (Entered: 02/20/2014) |
| 02/04/2014 | 5 | Minute Entry for proceedings held before Magistrate Judge A. Kathleen Tomlinson:Bond Hearing as to Joseph Valerio continued on 2/4/2014. Appearances: for Government: Allen Bode; for Defendant: Tony LaPinta (Ret); Court Reporter: Paul Lombardi; Pretrial: Donna Mackey; defendant present in custody. Bail application GRANTED. Order Setting Conditions of Release and Bond Entered. Special conditions apply. See bond for details. Government presents their argument. Confession of Judgment due by 2/19/2014. Defendant signs bond as suretor. Defendant to be released on or before 2/19/2014 after surveillance video is in place at defendant mother's home where defendant will be residing. (FTR: 1:15-2:09) (Ryan, Mary) [2:14-mj-00080-WDW] (Entered: 02/20/2014) |
| 02/04/2014 | 6 | ORDER Setting Conditions of Release as to Joseph Valerio (1) Secured Appearance Bond. NOTE: Defendant to be released after surveillance video in place. See bond for additional conditions of release. Ordered by Magistrate Judge A. Kathleen Tomlinson on 2/4/2014. (Ryan, Mary) [2:14-mj-00080-WDW] (Entered: 02/20/2014) |
| 02/12/2014 | 7 | Minute Entry for proceedings held before Magistrate Judge A. Kathleen Tomlinson:Bond Hearing as to Joseph Valerio held on 2/12/2014. Appearances: for Government: Lara Gatz for Allen Bode; for Defendant: Tony LaPinta (Ret). defendant present in custody. Report by Mr. LaPinta that defendant's mother's home is ready for Mr. Valerio to reside in. No opposition by Government. Application by Mr. LaPinta to have defendant be allowed to go to his Smithtown home to close the premises prior to residing at his mother's home as part of the conditions of release. No opposition by Government. Application granted. Defdendant released on bond. (FTR: 2:00-2:02.) (Ryan, Mary) [2:14-mj-00080-WDW] (Entered: 02/20/2014) |
| 02/26/2014 | 9 | SEALED INDICTMENT as to Joseph Valerio (1) count(s) 1, 2, 3, 4, 5. (Attachments: #(1) Criminal Information Sheet) (Mahon, Cinthia) (Additional attachment(s) added on 3/4/2014: # 2 Sealing Cover Sheet) (Mahon, Cinthia). (Attachment 2 replaced on 3/4/2014) (Mahon, Cinthia). (Entered: 03/03/2014) |
| 02/28/2014 | 10 | Minute Entry for proceedings held before Judge Joseph F. Bianco: deft present in custody with retrained counsel Anthony LaPnta; AUSA Allen Bode; Michele |

**J.A. 6**

| | | |
|---|---|---|
| | | Savona; order of detention entered; speedy trial x start 2/28/14 stop 3/6/14; Arraignment as to Joseph Valerio (1) Count 1,2,3,4,5 held on 2/28/2014, Initial Appearance as to Joseph Valerio held on 2/28/2014, Plea entered by Joseph Valerio Not Guilty on counts not guilty on all counts., ( Status Conference set for 3/6/2014 01:00 PM before Judge Joseph F. Bianco.) (Court Reporter D Tursi.) (Bollbach, Jean) (Entered: 03/04/2014) |
| 02/28/2014 | 11 | ORDER TO CONTINUE - Ends of Justice as to Joseph Valerio Time excluded from 2/28/14 until 3/6/14.. Ordered by Judge Joseph F. Bianco on 2/28/14. (Bollbach, Jean) (Entered: 03/04/2014) |
| 02/28/2014 | 12 | ORDER OF DETENTION as to Joseph Valerio. Ordered by Judge Joseph F. Bianco on 2/28/14. (Bollbach, Jean) (Entered: 03/04/2014) |
| 03/05/2014 | 13 | SUPERSEDING INDICTMENT (S-1) as to Joseph Valerio (1) count(s) 1s, 2s, 3s, 4s, 5s, 6s. (Bollbach, Jean) (Entered: 03/06/2014) |
| 03/06/2014 | 14 | Minute Entry for proceedings held before Judge Joseph F. Bianco: deft present in custody with retained counsel Anthonty LaPinta; AUSA Allen Bode; Michele Savona; deft continued in custody; Arraignment as to Joseph Valerio (1) Count 1s,2s,3s,4s,5s,6s held on 3/6/2014, Initial Appearance as to Joseph Valerio held on 3/6/2014, Plea entered by Joseph Valerio Not Guilty on counts not guilty on all counts of superseding indictment., ( Jury Selection set for 5/12/2014 09:30AM before Judge Joseph F. Bianco., Jury Trial set for 5/12/2014 09:30 AM before Judge Joseph F. Bianco.) (Court Reporter O Wicker.) (Bollbach, Jean) (Entered: 03/07/2014) |
| 03/06/2014 | 15 | Order to Unseal Indictment as to Joseph Valerio. (Endorsed on Criminal Information Sheet). Ordered by Judge Joseph F. Bianco on 3/6/2014. cm/ecf. (Mahon, Cinthia) (Entered: 03/07/2014) |
| 03/10/2014 | 16 | First MOTION for Release from Custody by Joseph Valerio. (Attachments: # 1 Exhibit Epic Security Proposal) (LaPinta, Anthony) (Entered: 03/10/2014) |
| 03/11/2014 | 17 | NOTICE OF ATTORNEY APPEARANCE Ameet B. Kabrawala appearing for USA. (Kabrawala, Ameet) (Entered: 03/11/2014) |
| 03/17/2014 | 18 | Letter *Enclosing Rule 16 Disclosures,* as to Joseph Valerio (Kabrawala, Ameet) (Entered: 03/17/2014) |
| 03/20/2014 | 19 | NOTICE OF ATTORNEY APPEARANCE: Leonard Lato appearing for Joseph Valerio (Lato, Leonard) (Entered: 03/20/2014) |
| 03/20/2014 | 20 | Second MOTION for Release from Custody by Joseph Valerio. (Lato, Leonard) (Entered: 03/20/2014) |
| 03/20/2014 | 21 | RESPONSE in Opposition re 20 Second MOTION for Release from Custody (Kabrawala, Ameet) (Entered: 03/20/2014) |
| 03/21/2014 | 22 | REPLY TO RESPONSE to Motion re 20 Second MOTION for Release from Custody (Lato, Leonard) (Entered: 03/21/2014) |
| 03/21/2014 | 23 | Minute Entry for proceedings held before Judge Joseph F. Bianco: deft present in custody with retained counsel Anthony LaPinta and Lenny Lato; AUSA Allen Bode; Michele Savona; deft continued in custody; jury selection and trial set for |

| | | |
|---|---|---|
| | | 5/12/14 at 9:30 am; decision made on the record. Written opinion to follow. Bond Hearing as to Joseph Valerio held on 3/21/2014, ( Status Conference set for 4/2/2014 01:15 PM in Courtroom 920 before Judge Joseph F. Bianco.) (Tape #ftr 1:30 - 2:06.) (Bollbach, Jean) (Entered: 03/24/2014) |
| 03/24/2014 | 25 | ORDER denying 20 Motion for Release from Custody as to Joseph Valerio (1); denying 16 Motion for Release from Custody as to Joseph Valerio (1). A detailed written memorandum and order will follow.. Ordered by Judge Joseph F. Bianco on 3/24/2014. (Bollbach, Jean) (Entered: 03/24/2014) |
| 03/25/2014 | 24 | NOTICE OF FILING OF OFFICIAL TRANSCRIPT of Proceedings as to Joseph Valerio held on 3/21/2014, before Judge Joseph F. Bianco. Transcriber Tracy Gribben's Transcription Service, Telephone number 732- 263-0044. Email address: TGribben@transcription.com. Transcript may be viewed at the court public terminal or purchased through the Transcriber before the deadline for Release of Transcript Restriction. After that date it may be obtained through PACER. Redaction Request due 4/15/2014. Redacted Transcript Deadline set for 4/25/2014. Release of Transcript Restriction set for 6/23/2014. (Cox, Dwayne) (Entered: 03/25/2014) |
| 03/27/2014 | 26 | NOTICE OF APPEAL (Interlocutory) by Joseph Valerio re: 25 Order (Lato, Leonard) Modified on 3/27/2014 to indicate order appealed from (Cox, Dwayne). (Entered: 03/27/2014) |
| 03/27/2014 | 27 | Letter *to defense counsel enclosing discovery,* as to Joseph Valerio (Kabrawala, Ameet) (Entered: 03/27/2014) |
| 03/28/2014 | 28 | NOTICE OF FILING OF OFFICIAL TRANSCRIPT as to Joseph Valerio for dates of 3/6/14 before Judge Bianco, re 26 Notice of Appeal - Interlocutory Court Reporter/Transcriber O. Wicker, Telephone number 631 712 6102. Transcript may be viewed at the court public terminal or purchased through the Court Reporter/Transcriber before the deadline for Release of Transcript Restriction. After that date it may be obtained through PACER. Redaction Request due 4/18/2014. Redacted Transcript Deadline set for 4/28/2014. Release of Transcript Restriction set for 6/26/2014. (Wicker, Owen) (Entered: 03/28/2014) |
| 03/28/2014 | 29 | MOTION in Limine by USA as to Joseph Valerio. (Kabrawala, Ameet) (Entered: 03/28/2014) |
| 04/01/2014 | 30 | ORDER as to Joseph Valerio re 20 Second MOTION for Release from Custody , 16 First MOTION for Release from Custody , 25 Order on Motion for Release from Custody. For the reasons set forth herein and the reasons set forth on the record on March 6, 2014, and March 21, 2014, the Court denies defendants motions for release from custody, and concludes (under a de novo standard of review) that the government has met its burden of demonstrating, by clear and convincing evidence on the issue of danger, and by a preponderance of the evidence on the issue of flight, that no condition or combination of conditions will reasonably assure the safety of the community or defendants appearance in court. Accordingly, the Court orders that defendant shall remain detained pending trial. SO ORDERED. Ordered by Judge Joseph F. Bianco on 4/1/2014. (Chipev, George) (Entered: 04/01/2014) |
| 04/01/2014 | 31 | Transmitted Supplemental Record on Appeal as to Joseph Valerio re 26 Notice of |

| | | Appeal - Interlocutory (Cox, Dwayne) (Entered: 04/01/2014) |
|---|---|---|
| 04/02/2014 | 32 | Minute Entry for proceedings held before Judge Joseph F. Bianco: deft present in custody with retained counsel Anthony LaPinta and Lenny Lato; AUSA Allen Bode; Michele Savona; deft continued in custody; motions to be filed by 4/9/14; opposition due 4/14/14; reply by 4/18/14; Status Conference as to Joseph Valerio held on 4/2/2014, ( Jury Selection set for 4/28/2014 09:30 AM in Courtroom 920 before Judge Joseph F. Bianco., Jury Trial set for 5/5/2014 09:30 AM in Courtroom 920 before Judge Joseph F. Bianco.) (Court Reporter ftr 2:11-2:20.) (Bollbach, Jean) (Entered: 04/02/2014) |
| 04/02/2014 | 33 | Letter *to defense counsel enclosing discovery* as to Joseph Valerio (Kabrawala, Ameet) (Entered: 04/02/2014) |
| 04/07/2014 | 35 | MOTION for Victim Rights by USA as to Joseph Valerio. (Kabrawala, Ameet) (Entered: 04/07/2014) |
| 04/08/2014 | 36 | Letter *to defense counsel enclosing discovery* as to Joseph Valerio (Kabrawala, Ameet) (Entered: 04/08/2014) |
| 04/09/2014 | 37 | INDICTMENT(s-2) as to Joseph Valerio (1) count(s) 1ss, 2ss, 3ss, 4ss, 5ss, 6ss-14ss, 15ss, 16ss. (Attachments: # 1 information sheet) (Bollbach, Jean) (Entered: 04/10/2014) |
| 04/09/2014 | 38 | Minute Entry for proceedings held before Judge Joseph F. Bianco:Arraignment as to Joseph Valerio (1) Count 1ss,2ss,3ss,4ss,5ss,6ss-14ss,15ss,16ss held on 4/9/2014, Initial Appearance as to Joseph Valerio held on 4/9/2014, Plea entered by Joseph Valerio (1) Count 1ss,2ss,3ss,4ss,5ss,6ss-14ss,15ss,16ss Joseph Valerio (1) Guilty Count 1ss,2ss,3ss,4ss,5ss,6ss-14ss,15ss,16ss. Deft present in custody with retained counsel Anthony LaPinta and Leonard Lato; AUSA Allen Bode and Ameer Kabrawala; Michele Savona; deft continued in custdoy; speedy trial x start 4/9/14 stop 9/22/14 ( Jury Selection set for 9/22/2014 09:30 AM in Courtroom 920 before Judge Joseph F. Bianco., Jury Trial set for 9/22/2014 09:30 AM in Courtroom 920 before Judge Joseph F. Bianco.) (Court Reporter P Auerbach.) (Bollbach, Jean) (Entered: 04/10/2014) |
| 04/09/2014 | 39 | ORDER TO CONTINUE - Ends of Justice as to Joseph Valerio Time excluded from 4/9/14 until 9/22/14.. Ordered by Judge Joseph F. Bianco on 4/9/2014. (Bollbach, Jean) (Entered: 04/10/2014) |
| 04/11/2014 | 40 | REPLY TO RESPONSE to Motion by USA as to Joseph Valerio re 35 MOTION for Victim Rights (Kabrawala, Ameet) (Entered: 04/11/2014) |
| 04/14/2014 | 41 | Letter *to defense counsel enclosing discovery* as to Joseph Valerio (Kabrawala, Ameet) (Entered: 04/14/2014) |
| 04/15/2014 | | SCHEDULING ORDER: Conference with government and attorney for Jane Doe and her family, to address government's sealed motion for appointment of guardian as litem for Jane Doe, is hereby scheduled for April 17, 2014 at 1:00 p.m. Ordered by Judge Joseph F. Bianco on 4/15/2014. (Savona, Michele) (Entered: 04/15/2014) |
| 04/17/2014 | 42 | Minute Entry for proceedings held before Judge Joseph F. Bianco:Status Conference for Jane Doe and family held on 4/17/2014; retained counsel William |

| | | Wexler; AUSA Ameet Kabrawala and Raymond Tierney; Michele Savona (Bollbach, Jean) (Entered: 04/17/2014) |
|---|---|---|
| 05/09/2014 | 48 | Letter *Regarding Firewall Discovery Production* as to Joseph Valerio (Elbert, Lauren) (Entered: 05/09/2014) |
| 07/01/2014 | 49 | First MOTION to Suppress *Statements* by Joseph Valerio. (Attachments: # 1 Exhibit) (Lato, Leonard) (Entered: 07/01/2014) |
| 07/09/2014 | 50 | MANDATE of USCA (certified copy) as to Joseph Valerio. Stipulation to dismiss the appeal So Ordered. (Cox, Dwayne) (Entered: 07/10/2014) |
| 07/29/2014 | 51 | Letter *to defense counsel enclosing 3500 materials in advance of July 31, 2014 hearing,* as to Joseph Valerio (Kabrawala, Ameet) (Entered: 07/29/2014) |
| 07/31/2014 | 52 | Minute Entry for proceedings held before Judge Joseph F. Bianco:Suppression Hearing as to Joseph Valerio held on 7/31/2014, deft present in custody with retained counsel AnthonyLaPinta and Lenny Lato; AUSA Allen Bode and Ameet Kabrawala; Michele Savona; def continued in custody ( Status Conference set for 9/3/2014 01:00 PM in Courtroom 920 before Judge Joseph F. Bianco.) (Court Reporter H Rapaport.) (Bollbach, Jean) (Entered: 07/31/2014) |
| 08/12/2014 | 54 | Letter *to defense counsel enclosing discovery,* as to Joseph Valerio (Kabrawala, Ameet) (Entered: 08/12/2014) |
| 08/13/2014 | 55 | Letter *to defense counsel enclosing discovery* as to Joseph Valerio (Kabrawala, Ameet) (Entered: 08/13/2014) |
| 08/20/2014 | 56 | Minute Entry for proceedings held before Judge Joseph F. Bianco:Status Conference as to Valerio RE: Jane Doe held on 8/20/2014; court denied motion to appoint guardian (Court Reporter D Tursi.) (Bollbach, Jean) (Entered: 08/20/2014) |
| 08/22/2014 | 57 | Letter *to defense counsel transmitting the government's plea offer,* as to Joseph Valerio (Kabrawala, Ameet) (Entered: 08/22/2014) |
| 08/26/2014 | 58 | Minute Entry for proceedings held before Judge Joseph F. Bianco:Bail Hearing as to Joseph Valerio held on 8/26/2014; deft continued in custody; bail denied (Court Reporter H $Rapaport.) (Bollbach, Jean) (Entered: 08/26/2014) |
| 08/27/2014 | 59 | Letter *to defense counsel regarding the government's plea offer,* as to Joseph Valerio (Kabrawala, Ameet) (Entered: 08/27/2014) |
| 09/02/2014 | 60 | Proposed Voir Dire by USA as to Joseph Valerio (Kabrawala, Ameet) (Entered: 09/02/2014) |
| 09/02/2014 | 61 | Letter *to defense counsel enclosing discovery,* as to Joseph Valerio (Kabrawala, Ameet) (Entered: 09/02/2014) |
| 09/03/2014 | 62 | ORDER TO CONTINUE - Ends of Justice as to Joseph Valerio Time excluded from 9/3/14 until 11/3/14.. Ordered by Judge Joseph F. Bianco on 9/3/2014. (Bollbach, Jean) (Entered: 09/04/2014) |
| 09/07/2014 | 63 | NOTICE OF APPEAL (Interlocutory) of Conditions of Release 64 Order by Joseph Valerio (Lato, Leonard) Modified to indicate order appealed from on 9/9/2014 (Cox, Dwayne). (Entered: 09/07/2014) |
| 09/08/2014 | 64 | ORDER as to Joseph Valerio For the reasons set forth in detail on the record on |

**J.A. 10**

| | | |
|---|---|---|
| | | August 26, 2014, as well as in the Memorandum and Order dated April 1, 2014 (and in the oral rulings on March 6, 2014 and March 21, 2014), the defendant's renewed oral motion for bail on August 26,2014 is denied. Ordered by Judge Joseph F. Bianco on 9/8/2014. (Bollbach, Jean) (Entered: 09/08/2014) |
| 09/09/2014 | | Electronic Index to Record on Appeal as to Joseph Valerio sent to US Court of Appeals <u>63</u> Notice of Appeal - Conditions of Release Documents are available via Pacer. For docket entries without a hyperlink or for documents under seal, contact the court and we'll arrange for the document(s) to be made available to you. (Cox, Dwayne) (Entered: 09/09/2014) |
| 09/09/2014 | | APPEAL FILING FEE DUE re <u>63</u> Notice of Appeal - Conditions of Release Please either come to the clerks office or mail the filing fee in the amount of $505.00. (Cox, Dwayne) (Entered: 09/09/2014) |
| 09/23/2014 | <u>66</u> | Letter *to defense counsel containing expert disclosure,* as to Joseph Valerio (Kabrawala, Ameet) (Entered: 09/23/2014) |
| 09/24/2014 | <u>67</u> | Second MOTION in Limine *to admit certain videos and images, and to preclude reference to penalties,* by USA as to Joseph Valerio. (Kabrawala, Ameet) (Entered: 09/24/2014) |
| 10/07/2014 | | USCA Appeal Fees received $ 505, receipt number 16206 as to Joseph Valerio re <u>63</u> Notice of Appeal - Conditions of Release : (Cox, Dwayne) (Entered: 10/07/2014) |

| PACER Service Center | | |
|---|---|---|
| **Transaction Receipt** | | |
| 10/07/2014 17:22:05 | | |
| **PACER Login:** | lb4559:3665627:0 | **Client Code:** | valerio |
| **Description:** | Docket Report | **Search Criteria:** | 2:14-cr-00094-JFB |
| **Billable Pages:** | 9 | **Cost:** | 0.90 |

# J.A. 11

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK


UNITED STATES OF AMERICA,          . Civil No. 14-CR-00094-JFB
                                   .
            Vs.                    .
                                   . 100 Federal Plaza
                                   . Central Islip, NY  11722
JOSEPH VALERIO,                    .
                                   . March 21, 2014
. . . . . . . . . . . . . . . .


TRANSCRIPT OF BAIL HEARING
BEFORE HONORABLE JOSEPH F. BIANCO,
UNITED STATES DISTRICT JUDGE

APPEARANCES:

For The USA:                    UNITED STATES ATTORNEYS OFFICE
                                By:  ALLEN LEE BODE, ESQ.
                                610 Federal Plaza
                                Central Islip, NY  11722

                                UNITED STATES ATTORNEYS OFFICE
                                By:  AMEET B. KABRAWALA, ESQ.
                                271 Cadman Plaza East
                                Brooklyn, NY  11201

For The Defendant:              REYNOLDS CARONIA GIANELLI HAGNEY
                                  LaPINTA & HARGRAVES
                                By:  ANTHONY M. LaPINTA, ESQ.
                                35 Arkay Drive, PO Box 11177
                                Hauppauge, NY  11788

For The Defendant:              BY LEONARD LATO, ESQ.,
                                35 Arkay Drive
                                Hauppauge, NY  11788


Proceedings recorded by electronic sound recording, transcript
produced by transcription service.

**TRACY GRIBBEN TRANSCRIPTION, LLC**
**27 Beach Road, Unit 4**
**Monmouth Beach, NJ  07750**
**800 603-6212**
**(732) 263-0044    Fax No. 732-865-7179**
www.tgribbentranscription.com

**J.A. 12**

1                          I N D E X

2

3   MOTION                                      PAGE

4

5        BY MR. LaPINTA                         4/19

6        BY MR. BODE                            13

7        BY MR. LATO                            8/19

8

9   DECISION                                    21

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

Colloquy                                          3

1    COURT CLERK:  Calling case 14-cr-94, US v. Joseph

2 Valerio.  Please state your appearance for the record.

3    MR. KABRAWALA:  Assistant US Attorney Ameet Kabrawala

4 joined by AUSA Allen Bode.  Good afternoon, Your Honor.

5    THE COURT:  Good afternoon.

6    MR. LaPINTA:  Good afternoon, appearing for Joseph

7 Valerio, Anthony Lapinta and also Leonard Lato.

8    THE COURT:  Okay, good afternoon.  Defendant is

9 present as well.  Obviously, we scheduled this because

10 defendant has a renewed bail application based upon the March

11 20th letter which the Government responded to and I also had

12 reviewed the March 21st reply letter and I just see I'm being

13 handed up, hold on one second.

14    MR. BODE:  I handed up, Your Honor, a -- sorry, I'll

15 stand up -- an e-mail which I was going to refer to today in

16 some of my remarks.  I've given a copy to defense counsel as

17 well.  It's an e-mail that Mr. Valerio sent to the

18 co-conspirator in the Ukraine.

19    THE COURT:  Okay.  Let me just take a minute just to

20 look at it.

21    MR. BODE:  Thank you.

22    THE COURT:  I'll let the defense go first since this

23 is their application.

24    MR. LaPINTA:  I'm sorry, Your Honor.

25    THE COURT:  I said I'm going to let you go first

**J.A. 14**

1 since this is your application, okay?

2          MR. LaPINTA:  Thank you.  Judge, would you mind if I

3 used the microphone?

4          THE COURT:  No, you can use that, just pull the mic

5 up.

6          MR. LaPINTA:  Thank you.  Yes, sir.  May it please

7 the Court and Your Honor, I guess the best way to describe this

8 application is a supplemental bail package.  When we were here

9 last and we made the extensive bail package application to the

10 Court, we took particular note to the reasons that you

11 carefully, prudently and properly articulated on the record in

12 denying the application.  What I mean by properly, I mean in

13 terms of developing a record.

14          You addressed a number of different issues that you

15 were concerned about insofar as a security guard being present

16 at the home being inadequate to assure one safety and two,

17 safety of the community and also two, his ability to flee.  You

18 articulated on the record that a security guard would not be

19 able to monitor him inside the house in the event that he would

20 cut off the ankle bracelet and flee by a back door, a window or

21 other exit areas of the house.

22          To address that concern, and to make in my estimation

23 as fool proof, error proof of a package as possible, we offer

24 the additional conditions.  A second security guard to be at

25 the location.  And the second security guard could be

LaPinta/Argument                                                    5

1  positioned anywhere that you, the FBI, pretrial services, the

2  US attorney's office would feel appropriate to be including one

3  being outside, one being inside, two being outside, one in the

4  rear of the house, one in the front of the house.  One being

5  inside the house, one roving the outside of the house or even

6  supplementing and moving about in whatever areas of that

7  premises they feel is appropriate to provide the safest type of

8  secured environment possible.

9        The way that this house is structured, a layout of

10 the house lends itself to very, very thorough, comprehensive

11 surveillance of the occupants of the house.  The entrance of

12 the house could be monitored very easily.  The exits of the

13 house could be monitored very easily.  The bedroom of the house

14 where my client will be sleeping is actually in a location of

15 the house where there is only one way to enter and exit.  The

16 window is the type of window that cannot open to the degree

17 where someone, a human being could fit outside the window.

18       That is because it isn't typically a bedroom.  It's a

19 living room that has been made into a bedroom and there's a bay

20 window there that allows the windows to open in a way that

21 allows for perhaps an 8 to 10 inch gap of opening.  Over and

22 above two licensed professional security guards, this house as

23 you're aware has a recently installed camera system that is

24 surveillancing (sic) the perimeter of the outside perimeter of

25 the house that has a direct feed to the Government.  I'm not

LaPinta/Argument                                    6

1  going to go into every particular detail.  I'm sure you know of

2  them very well.

3       In addition to that security camera device, there's

4  also a security system device that the house has and has had

5  for years.  It's a device that is wired to all entrances, exits

6  and windows of the house.  It's an alarm system.  If a door is

7  opened, if a window is opened, that alarm goes off.  There's

8  one key pad that controls that alarm system.  That key pad is

9  programmable.  We have no problem at all having that program

10  set to a confidential password to engage and disengage the

11  system.

12       I can't think of any other conditions that could

13  satisfy what the Court articulated in denying this bail

14  application.  There are a number of cases that were cited by

15  the Government, all of them as you read from our submission

16  this morning in response to that, are all easily

17  distinguishable cases insofar as they involve organized crime

18  cases with active leaders of crime families.

19       This is not a conspiracy case of somebody who is, you

20  know, here accessible without having computer or phone access.

21  Mr. Valerio is in a situation where he would be in the solitude

22  sanctuary of his home, in a secure safe environment not only

23  for himself but also for the general public in terms of the

24  danger issue that you must consider here in this application.

25  If you want us to further our discussion of the applicable law

**J.A. 17**

1  and how these cases are distinguishable, I'm happy to address

2  that.  I would ask Mr. Lato to answer those questions since he

3  authored that submission to the Court.

4          THE COURT:  Yes, I guess, I just wanted to talk about

5  those cases briefly so if Mr. Lato wants to address that.

6          MR. LaPINTA:  Sure.

7          THE COURT:  Essentially, I think, and I know

8  obviously you disagree with what I think the level of

9  dangerousness and flight is but essentially you're trying to

10 replicate a jail in his home and there's a back and forth in

11 the case law which you cite about whether or not some courts

12 have expressed, Judge Rakoff has stated that if someone has the

13 wealth to replicate a jail, that's what the Bail Reform Act

14 allows.  Other courts have disagreed with that and the

15 Government cites a Second Circuit case where they don't address

16 that issue but they say they're troubled, I think was the word

17 in the summary order, they were troubled by that prospect.

18          But in this case, to the extent that you're trying to

19 create that jail, there's two things that I think can't be

20 overlooked.  The first is that the jail is at the mercy of this

21 firm that's hired as well as the additional government

22 resources that would be necessary to monitor that security firm

23 to make sure that they're doing a good job even though the

24 defendant is paying for them.  And all the other conditions

25 that you are proposing that would require the Government to

1   conduct an unannounced search to check the surveillance system,

2   to monitor whatever other things that you're proposing that

3   they monitor.  That requires the Government to essentially make

4   sure that this private jail is running at the way it should be.

5   And I don't see anything in the bail reform or case law that

6   suggests that that should be what the Government needs to do.

7   I want you to address that aspect of replicating a jail as

8   opposed to the issue of wealth or not wealth because this is to

9   me a separate issue.

10          MR. LATO:  There's always going to be some Government

11  expense in anything that we do, even in this courtroom today.

12  If a person is in the MDC, there's a government expense there.

13  If a person is under house arrest, you have pretrial services

14  making visits unannounced.  We've had cases where the Judges

15  have allowed defendants out on bail where the FBI or the DEA

16  will also have the option of making an unannounced visit to the

17  house.  I had a case before Judge Seybert, it was a motorcycle

18  gang where one of the deciding factors in Judge Seybert

19  releasing, you know, my client was that we consented to random

20  searches not only by pretrial but by the ATF in that case.

21          Granted the ATF is not going to spend money going all

22  around but as I said, there's an expense in everything.  Now,

23  it's going to be a minimal expense and with respect to the

24  security firm, if of course the security firm based upon the

25  Government's investigation or the FBI's, when I say that, the

1  US attorney's office and the FBI is unacceptable, then that's

2  it.  We have to come up with a different firm.  They would be

3  right.  But, but for that, there's no reason why this firm

4  would be presumptively no good to insure this.

5          THE COURT:  But when you say no good, the problem

6  with any private firm is that you're at the mercy not just of

7  the reputation of the firm generally, the Government may have

8  either favorable view or no view of the reputation of that

9  firm, but you're at the mercy of each individual person who is

10 sitting in the house on any particular day.  So you know every

11 single person who works with that firm, would be part of

12 replicating the jail is a potential weakness in the whole

13 proposal.  That's the whole problem with private jails.

14         We have jails, we don't have those issues and

15 obviously you could have people who work for the Bureau of

16 Prisons who might be problematic but there's a much more

17 elaborate system to guard against all the things that the Court

18 would be concerned about with someone in their home and you're

19 at the mercy of every aspect of that firm, not just its general

20 reputation of whether or not there's an FBI agent, former FBI

21 agent who runs the firm or who works at the firm.  I don't know

22 anything about this firm but.

23         MR. LATO:  But to address at least some of the

24 concerns of the Court is that the members of this Epic

25 Security, all right are retired law enforcement, some are NYPD.

Lato/Argument                                    10

1  Some are others.  It's not as if these are people who needed a

2  job and they became security officers.

3          THE COURT:  You're proposing that they would be armed

4  or not armed?

5          MR. LATO:  No, armed would be only if the Government

6  says it's okay.  We can have armed guards, but as I said in my

7  first letter, I don't know if Special Agent Troy and his

8  colleagues would want to have armed guards at the residence.

9  That's strictly up to the Government and the Court.  We have

10 the option.  We will pay for armed guards.  It's at the

11 discretion of the Court and the Government because that's

12 obviously a double edged sword is perhaps the wrong metaphor to

13 use here but does the FBI want anyone other than themselves

14 having guns?  But we can do that.

15         The thing is this.  There was one case I cited in my

16 opening brief that nothing will guarantee the safety of the

17 community or guarantee against the risk of flight.  But if the

18 adverb reasonably means anything, coupled with assure, will

19 this reasonably assure the safety of the community and other

20 persons and the defendant's appearance as required?  The

21 reality is this.  I could probably do a better job than most

22 anyone in escaping, but even I could not escape from this

23 place, all right.

24         The reality is this.  Where could Mr. Valerio go even

25 if he managed to climb out a window, down a set of towels?  He

1  will be found in moments.  He's not a member of La Cosa Nostra

2  where it's the Genevieves or the Gambinos where simply by

3  having a conversation he can order a hit in an ongoing war.

4  The reality is this.  He poses a danger to no one if he's in

5  that house.  There are no electronic devices.  He can't

6  reasonably get out of there.  Obviously, we have to consider

7  the fact that he was out for a week before the second complaint

8  was brought.

9          In that week, nothing went wrong.  So that is at

10 least a consideration.  Of course it's not dispositive but it's

11 a factor.  And the point is this.  This is about as

12 comprehensive a package as even the most creative defense

13 lawyers can come up with and I think I'm going to say something

14 today that has been unspoken but I think it's appropriate.

15 There's something about this case that I think gives people

16 unease.  If this were a drug case, or a typical violent crime

17 case, we have the same statutory presumptions of danger to the

18 community and risk of flight.  There is nothing in the Bail

19 Reform Act that makes it different for manufacture or child

20 pornography.

21         However, it makes everyone uneasy.  But unlike a lot

22 of the violent crime cases and the drug cases, there's no

23 conspiracy here and it's just speculation to believe that if

24 Mr. Valerio were to get out, he would somehow go on a child

25 porn manufacturing spree or run to who knows where.  There's

Bode/Argument                                    12

1  just something about the crime itself that makes people feel

2  uneasy they were not accustomed to and I think that's a big

3  factor why the Government and the Court as of course I am aware

4  of the Bail Reform Act is reluctant to release him.

5          But this is a huge package, several million dollars,

6  house arrest, private security.  This is the most I think

7  anyone can reasonably come up with and I know the Court stated

8  the last time you're not saying as a blanket rule no one can

9  get out in child manufacturing cases.  But we're coming pretty

10 close to that given the size of the package because even if we

11 had $10 million or 30 million instead of three we would still

12 be in the same place.  If we had 15 guards, we would still be

13 in the same place.

14         Helicopters, the same thing.  Because it's all

15 private.  The reality is this.  Presumably, unless there's

16 something wrong with Epic Security, these people will do their

17 job.  Agent Troy and his colleagues do not have to drive by the

18 house.  They'll have a good feeling very soon within a day or

19 two whether this is trustworthy and given the relationship, I

20 think that we have with the Government here, if there's even

21 something that makes the Government uneasy, even if it's not a

22 violation, we will address it right away.

23         The slightest thing that Special Agent Troy or

24 Special Agent Macinio (phonetic) or any other agent or Mr. Bode

25 or his colleague, I'm sorry, we've never met, says we don't

Bode/Argument                                        13

1  like this, we'll correct it.  The slightest thing we'll correct

2  it.  They don't like what the mother is wearing, we'll change

3  her outfit.  That's the best that we can do.  If there are any

4  other cases, Your Honor, that you want me to go through?

5            THE COURT:  No, that's okay.

6            MR. LATO:  But as you see in my letter, I don't think

7  any of the cases that the Government cites has any relevance.

8            MR. BODE:  Thank you, Your Honor.  Simply by having a

9  conversation online, Mr. Valerio can and has demonstrated in

10 the past that he can have a child molested in horrible,

11 horrible ways.  I handed up just a sample of an e-mail from

12 July 17th, 2012.  It demonstrates both the strengths of the

13 Government's case and the ease by which Mr. Valerio could with

14 an electronic device cause an immeasurable harm, I submit a

15 harm much greater than any drug case, although Mr. Lato does

16 not recognize those dangers obviously.

17            In the e-mail, you can see he's talking about the

18 video sent by cell phone camera that he needs, you've done a

19 terrific job with the cell phone camera.  I have a new cell

20 phone that allows me to transfer your video to my e-mail.  The

21 screen is bigger to view.  Plus you can have endless video time

22 per session with the cell phone.  He talks about specific acts,

23 very specific acts that he wants to have done with the three

24 year old.  He talks about how he wants her to be dressed in

25 pantyhose which I would note is also, there are also photos of

Bode/Argument                                    14

1  the six year old victim that he dressed up in a similar manner.

2       On page 2, he discussed very graphic sex acts that he

3  wants conducted on this child.  Towards the end of the e-mail

4  in all caps, he tells her get those videos done.  He talks

5  about how he wants her to, in addition to children, he wants

6  this woman to create videos in locker rooms, et cetera and he

7  says just turn your cell phone camera on.  Point it at your

8  subject.  Woman, teen or little girl.  Aim it as you pretend to

9  be speaking on your cell phone.  As you keep it filming with

10  the phone to the ear.

11       Very specific directions and I would note it shows

12  how easy it is for him to commit this crime.  The defense here,

13  Your Honor, is in essence trying to create a private jail.  But

14  even aside from the issues of whether a private jail would be

15  allowable, which the Second Circuit is troubled by in the Banki

16  case, they did a bad job, they're doing a bad job of it here in

17  not accounting for the online danger.  They can't account for

18  that online danger, I submit.

19       The online danger here can be established with you

20  know, a device as small as you know, two inches by three inches

21  which you could secrete anywhere in that house.  People coming

22  into that house could bring them in.  The defendant's mother

23  parks in an attached garage in that house.  They could come in

24  via her car.  There's a myriad of ways that a cell phone or an

25  electronic device could make its way into that house.  Based

Bode/Argument                                            15

1  upon the years that I've been here in the Eastern District,

2  they find cell phones at times in jails.  If a cell phone can

3  make its way into a jail facility and that has happened in the

4  past, how much easier is it that this device can make its way

5  into the home?  Especially where as the defense indicated at

6  the first arraignment on the superseding indictment before

7  Judge Brown, the defense conceded that the defendant's mother

8  had mental difficulty since having some medical issues arise.

9          I would note as well there's no, the resources here,

10 the defense is speaking with, in terms of a private security,

11 even if the Government were to authorize and we cannot

12 authorize, a private security to carry guns, we can't authorize

13 them to shoot Mr. Valerio if he flees.  These are issues that

14 are dealt with in the jail, properly dealt with at the jail

15 environment that can't be replicated in a private jail no

16 matter the resources.

17         And frankly with jail facilities, the guards are

18 trained for what they're doing.  Private security guards are

19 not federal agents.  They haven't gone through the same

20 training that federal agents have gone through specifically

21 agents involved in securing prisoners.  So it's the online

22 danger here which is dramatic.  But in terms of the danger of

23 flight as well.  If they can't shoot him, they can't tackle him

24 in leaving.  There's still nothing to stop him from snipping

25 off a monitor and going.  We'll know that he goes.  We'll get

Bode/Argument                                    16

1  maybe, maybe get a little more notice.

2          But in terms of the house, are they going to

3  accompany him into the bathroom?  Are they going to sit there

4  in the bathroom with him when he's in the bathroom?  When he's

5  sleeping, are they going to be in the room with him?  You know,

6  a jail environment is a very secure environment compared to the

7  home environment.  In terms of Mr. Valerio, one thing, just in

8  terms of a new piece of information that I happen to have

9  another proceeding today with the pretrial officer that

10 supervised Mr. Valerio during the brief time that he was out.

11 And she indicated that he was very difficult to supervise in

12 that she indicated she had never seen someone as controlling as

13 he was with the girlfriend that was in the office with her.

14         When Mr. Valerio was in the waiting room at pretrial

15 services with his mother, at one point he was screaming at his

16 mother so loudly, that the pretrial officer had to come from

17 the back where they are, all the way to the front lobby of the

18 pretrial services because he was screaming at his mother

19 regarding something to do with paying of attorneys.  I submit

20 Mr. Valerio's history shows his rage.

21         Mr. Lato indicated there was nothing, he was out for

22 about a week, I would note as we noted previously, he was out

23 for about a week and his immediate impulse was to lie to the

24 psychologist who was treating him.  He lied about the crime

25 that he, the very crime that he was charged with.

Bode/Argument                                    17

1      In terms of, just a couple other matters that were
2  raised by the defense which I note and then I just want to say
3  a couple words about some of the cases.  It's not a matter of
4  unease about the crime, Your Honor.  This is a very serious
5  crime.  It's one of the most serious crimes in the federal
6  statute.  And the measure of harm here should Mr. Valerio
7  access an Internet device is incalculable.  The abuse of the
8  three year old which he directed and is described in the e-mail
9  was horrific abuse committed on a toddler.

10      So it's not an unease.  It's the measure of the harm
11 that can be incurred and the ease with which he can commit that
12 harm.  I would also note the defense keeps mentioning the 3
13 million figure and as we mentioned before, it's at best 2.2
14 million.  There's now a forfeiture count as to the defendant's
15 residence which was one of the items which was going into that
16 figure.

17      In terms of the cases, the <u>Sabhnani</u> case which the
18 defense cites is very easily distinguished.  As the defense
19 concedes, it's a presumption, this is a presumption case.
20 <u>Sabhnani</u> was not.  In <u>Sabhnani</u>, the Government proposed the
21 very conditions which the defense then accepted.  And <u>Sabhnani</u>
22 also doesn't account for the online danger.  <u>Sabhnani</u> was a
23 case where you couldn't commit the crime without hiding a
24 person.  It's not a crime that was able to be committed with a
25 small electronic device easily secreted.

**J.A. 28**

Lato/Argument                                              18

1          I would note in <u>Banki</u>, the Second Circuit directly

2   dealt with <u>Sabhnani</u>.  They actually, from <u>Banki</u>, they indicated

3   -- a moment here -- Mr. <u>Banki</u> contends that our decision in

4   <u>Sabhnani</u>, S A B H N A N I, entails a legal obligation on

5   District Courts to evaluate whether such privately financed

6   home confinement would suffice to secure a defendant's

7   attendance.  <u>Sabhnani</u> does not impose such a requirement.

8          And then they limit <u>Sabhnani</u>.  They indicate in that

9   case rather we concluded that the Government's argument that no

10  conditions release could prevent defendant's flight was

11  "undermined" by its own submission which argued only that the

12  defendant's proposal contained certain loopholes which the

13  defendants promptly agreed to close by accepting the

14  Government's proposed amendments to its plan.  And I would also

15  note in addition to <u>Banki</u>, the case of <u>Shelikhov</u>,

16  S H E L I K H O V which is 468 F. Appx. 54 which is an

17  unpublished case from March 19th, of 2012 which again the

18  Circuit noted that <u>Sabhnani</u>, the Government's argument was

19  drastically undermined because they had proposed the very

20  items, loopholes which the defense then closed.

21         There is no way to properly account for the online

22  danger which can be committed with a device as small as a cell

23  phone and frankly was committed that way in the past by Mr.

24  Valerio.  Jail environment where everything is regulated, food,

25  bathroom, visitors can sufficiently account for that danger.

Lato/Argument                                    19

1  Could I have just one moment, Your Honor?  That's it, Your

2  Honor, thank you.

3      MR. LATO:  In reply to Mr. Bode's argument, I have

4  the following to say.  With respect to <u>Banki</u>, B A N K I, that

5  case has no applicability here because there we're talking

6  about somebody doing business with the blacklisted country of

7  Iran violating an order of the President of the United States

8  under the International Emergency Economic Powers Act.  So what

9  we're really talking about in that case, and I don't need to go

10 through the whole history of the US foreign policy with Iran,

11 no one is getting out in that case and this case isn't even

12 remotely comparable to that.

13      In fact, Mr. Irina (phonetic) himself had a better

14 shot of getting out then Mr. Banki.  Now, with respect to Mr.

15 Bode saying if Mr. Valerio runs, it's not like the private

16 security firm can shoot him.  Well, based upon my understanding

17 of New York and federal law, neither can Special Agent Troy

18 under those circumstances.  There would probably be some

19 question of why they're shooting an unarmed man in the back.

20 But let's not engage in speculation here.

21      Now, in terms of Mr. Valerio supposedly lying to a

22 psychologist, well, if he did that, that's a bad thing.

23 However, it's not like he said, even according to the

24 Government, I was arrested for stealing a letter from the mail.

25 Some people are understandably reluctant to talk about what

1  they have done in terms of the severity.  Now, having said

2  that, he didn't run.  He didn't engage in acts of violence

3  against children or anyone else.  So although what he did to

4  the psychologist if it occurred or yelling at his mother, may

5  be behavior that one wouldn't approve of, it's not a violation

6  of the conditions of his release.

7       Now, Mr. Bode is saying that I don't understand the

8  difference here with respect to this case and say a drug case

9  and the ease with which Mr. Valerio could access an electronic

10 device and I thank Mr. Bode for explaining what I don't

11 understand but the reality is this.  It's one thing if a person

12 wants to get a cell phone or have a conversation to help

13 himself say kill someone to make his case better, although

14 under the Federal rules that wouldn't help him if he wants to

15 escape.

16      As the Court said in <u>Madoff</u>, to the extent that

17 anything occurred in the past, such as the crime that Mr.

18 Valerio or crimes he may have committed is relevant to bail

19 only looking forward.  So whatever e-mails Mr. Valerio sent if

20 they have no bearing on what he is likely to do, they are

21 irrelevant.  So I still have yet to hear anything other than

22 speculation why would Mr. Valerio based upon his history of all

23 things want to get his hands on a cell phone to send a text

24 message to some unknown person to manufacture child porn?

25 There's no evidence at all and it's only speculation to suggest

**J.A. 31**

Decision                                                21

1  that's likely to occur.

2              He can't get out of the house, when I say can't, I

3  mean reasonably.  There is no basis to believe reasonably he

4  could do any of this.  One final thing, with respect to the

5  bail package.  Mr. Bode states that the $3 million package is

6  really only $2.2 million.  He's wrong and here's why.  The

7  house that Mr. Valerio has put up, his own house that's worth

8  about $800,000, true, Mr. Valerio may lose that house.  But he

9  has only $200,000 in equity.  And I say that because when we

10 proposed the $3.2 million package, we took into account the

11 fact that he had only $200,000 in equity.

12             So the package is still in the $3 million range, not

13 2.2 million.  Hold on one second, please.  That's it, thank

14 you.

15             THE COURT:  Okay, thank you.  The Court has obviously

16 reviewed the additional bail proposal and letters related to

17 that as well as the argument of counsel and again, I looked at

18 the issue again de novo and I again find, I'm not going to

19 repeat all of the reasons that I gave previously, and I think

20 I'm going to issue a written decision on this in any event but

21 I again find that the Government independent of the presumption

22 has met by clear and convincing evidence its burden of

23 demonstrating that the defendant is a danger to community such

24 that no conditions or a combination of conditions can

25 reasonably assure the safety of the community as well as by a

Decision                                           22

1  preponderance of the evidence that no combination of conditions

2  can assure his appearance in court.

3          And again, I rely on everything that I said

4  previously.  I'm just going to summarize a couple of things and

5  address the specific issues with respect to this proposal and

6  why I believe that these conditions or any combination of

7  conditions cannot beat the issues of danger and flight in this

8  case.  I just emphasize again we have the most serious type of

9  crime here in which the defendant is charged with aiding and

10 abetting the sexual exploitation of a child and as Mr. Bode

11 noted, it's not just the extreme danger presented by those

12 charges.

13         And again, I believe, based upon what I said at the

14 earlier hearing that on the weight of the evidence factor that

15 it is an extremely strong case based upon the Government's

16 proffer of its evidence but it is not just the danger that's

17 raised by that crime but in combination with how that crime was

18 alleged to have taken place here which was the use of Internet

19 devices, was the crimes charged here relate to Mr. Valerio's

20 home including the second series of charging that were the

21 subject of the superseding indictment so you have extremely

22 dangerous conduct charge involving sexual abuse of a child

23 through the use of what can be extremely small Internet devices

24 occurring at least in part in the home.

25         And given, I'm speaking now to the issue of danger,

1  given those, and I should add a proffer of the Government that

2  within that home that there were cameras secreted within walls

3  of the home, under those circumstances for the reasons I

4  outlined previously, it's my conclusion that the only

5  conditions that could reasonably assure the safety of the

6  community in this particular case not in every case where

7  someone is charged with child, possession of child pornography

8  or some other similar crime because there are defendants who

9  are before me who are on bail on home detention in some of

10 those cases.

11       But in this particular case, given these allegations

12 and charges and the evidence the Government has proffered, it

13 is my view the only conditions that could reasonably assure the

14 safety of the community would be replicating a jail.  And the

15 defense has done their best to try to replicate a jail in Mr.

16 Valerio's home.

17       I put aside the issue of whether or not assuming you

18 could replicate a jail that a defendant should be able to

19 replicate a private jail in his home, I don't need to decide

20 that issue.  The Second Circuit has decided that issue,

21 although I agree with the summary order that suggests that

22 that's troubling and I believe that to the extent that Mr. Lato

23 and some other courts have addressed that particular issue and

24 say the Bail Reform Act refers to if you can find conditions of

25 release that are sufficient that that should, that it's not

Decision                                                    24

1 punitive and that's true.

2       But what we're talking about here are not really

3 conditions of release.  What we're talking about here are

4 really conditions of confinement by replicating a jail, these

5 aren't conditions of release where essentially trying to limit

6 the defendant's freedoms almost exactly in the same way they

7 would be as if he were in jail.  So what we are really talking

8 about here are simply conditions of confinement and I don't see

9 that the Bail Reform Act was seeking to address how once it's

10 determined that someone needs to be essentially in jail,

11 because of the danger or flight issue that then you should try

12 to create conditions of replicating that jail in a private

13 setting.  I just don't see that intended in the Bail Reform

14 Act.  I don't believe there's any constitutional right to

15 replicate a jail cell in your home.

16       But in any event, I need not decide that issue and I

17 think there's a reason that no court, at least Circuit Court

18 has had to decide that issue is because for all the reasons Mr.

19 Bode noted and some of the reasons I think I've indicated to my

20 questions when defendants including in this case try to

21 replicate that jail, it is an imperfect jail in almost every

22 situation including this one for two fundamental reasons.

23       First, the Government is at the, there are several

24 aspects to this package including the security firm, including

25 the monitoring of people in and out, that as for the reasons

Decision                                                                  25

1  Mr. Bode cited and I agree are highly imperfect when compared

2  to a jail.  The Government is at the mercy of the hiring, the

3  training of the security people who are utilized throughout the

4  period of monitoring.  You have issues about armed or unarmed

5  which again you don't have those issues in jail.

6         There are obviously problems with both having them

7  armed and having them unarmed but that's why jail is a more

8  perfect forum for addressing this type of danger.  And you have

9  training issues, legal authorization issues for all those

10 reasons, the Government and to the extent the Court would be

11 relying on a security firm or at the mercy of the firm itself,

12 which is not the equivalent of the system of security in a jail

13 both in terms of the guards and the other safeguards in a jail.

14        Secondly, the Court is at the mercy or all the people

15 that go in and out of there, even if they're approved people.

16 Again, because it's not a jail.  And even the jail is not

17 perfect, but it's much more prefect at regulating whose

18 bringing what into the jail versus a home especially when you

19 have relatives or other individuals who are coming in to visit

20 the defendant.

21        So I believe that to extent that the defendant has

22 tried to replicate a jail in his home in this case, it is

23 highly imperfect and does not address the issues of danger

24 created if a defendant has access to any type of Internet

25 device, in my view in this case, that poses a danger to the

# J.A. 36

Decision                                                    26

1  community that should, the community should not have to face

2  and this is an imperfect attempt to right or make sure that

3  that does not happen.  Secondly, to the extent you could try to

4  replicate a jail with these conditions, it does have costs to

5  the Government.

6          Although he's paying for the security firm to the

7  extent that the Government again has to check into the security

8  firm, monitor the security firm or enforce other of these

9  provisions of release including viewing the surveillance system

10  that exists, conducting unauthorized searches of the house or

11  unannounced visits, all of those different things would require

12  diversion of Government resources and Government law

13  enforcement personnel from other activities and other cases and

14  there's nothing in the Bail Reform Act that suggests that if

15  the defendant wants to try to replicate a jail in his home,

16  that the Government should have to utilize law enforcement

17  agents to constantly verify that that private jail is running

18  in the way that it should be and for that reason, second reason

19  I believe that this is also an imperfect replication of a jail

20  that is not required under the Bail Reform Act.

21          So for those reasons, I continue to find that the

22  Government has met its burden by clear and convincing evidence

23  as to danger that these conditions as well as any other

24  combination of conditions would not reasonably assure the

25  safety of the community.  I also again believe that flight by a

**J.A. 37**

Decision                                                    27

1  preponderance of the evidence, the Government has demonstrated

2  that no conditions can reasonably assure his appearance in

3  court.  Again, I won't reiterate everything I said previously.

4       The defendant is looking at a substantial mandatory

5  minimum in the case with the guidelines that are much higher

6  than the mandatory minimum, in a case where the Government has

7  proffered extremely strong if not overwhelming evidence with

8  respect to the charges in the superseding indictment and that

9  creates an enormous risk of flight that I don't believe is

10 addressed by bracelet or trying to have armed guards follow

11 him, unarmed guards or armed guards try to follow him around

12 the house this package, although it certainly is substantial,

13 there's no indication what moral suasion the defendant's mother

14 or other family members have over the defendant at this point

15 given the situation that he is facing in terms of jail time and

16 the strength of the Government's case.

17      And I certainly am not reasonably assured in my mind

18 that he would not make some effort to try to avoid having to

19 face trial in this case and the potential penalties that are

20 confronting him in this situation.  So for all those reasons,

21 I'm detaining the defendant pending trial.  Are there any other

22 issues we have to discuss today?

23      MR. KABRAWALA:  Your Honor, the Government has

24 exchanged or served discovery.  I learned that it was not

25 received so defense counsel and I are going to go back down to

Colloquy                                              28

1  my office and we'll turn over some of the discovery that we had

2  actually posted on Monday.  There may be --

3              COURT CLERK:  If you could just bring your mic a

4  little closer?  I'm sorry.

5              MR. KABRAWALA:  I'm sorry.  There may be discussions

6  with respect to the disposition of the case and you know, we'll

7  hear from the defense about that.  That's it for the moment,

8  Your Honor.

9              THE COURT:  I just, I did want to raise one, I don't

10  know, do you have an issue you want to raise or no?

11              MR. LaPINTA:  No, sir.

12              THE COURT:  Just with respect to the trial date.

13              MR. LaPINTA:  Yes.

14              THE COURT:  Which I think is May 12th.  Right now we

15  have scheduled another trial on that date with Mr. Barkat

16  (phonetic) and his client who's incarcerated which is supposed

17  to be I think three to four weeks.  So if your client does not

18  want to waive the speedy trial time, we may need to move that

19  date a little earlier.  So I wanted to give you a heads up on

20  that, that there's a problem.  I don't know if you have given

21  that some thought or what your intention is with respect to the

22  May 12th date.

23              MR. LaPINTA:  Well, I might as well address the

24  Court.  I wasn't going to because it may not be an issue but I

25  will in light of what you just told me.  We may appeal your

Colloquy                                                    29

 1  denial of bail.  I'm sure that's not a surprise to you.

 2  However, we're not certain at this juncture if we're going to

 3  do that.  Obviously --

 4           THE COURT:  Okay.  I do want to let you know I am

 5  going to issue a written opinion.

 6           MR. LaPINTA:  Okay.

 7           THE COURT:  You can obviously appeal and if you want

 8  me to issue a short order today, just denying the bail so that

 9  you can start the appellate process, I'm willing to do that.  I

10  think the written opinion will be out in the next week but I'm

11  willing to, because you need an order to appeal off of.

12           MR. LaPINTA:  Why don't we do that, yes?

13           THE COURT:  Okay.  I'll just written opinion to

14  follow.

15           MR. LaPINTA:  We're going to need the transcripts as

16  well and that's going to take a little time.

17           THE COURT:  Okay.

18           MR. LaPINTA:  So obviously if we do decide to do

19  that, and we will decide that in short order, that's going to

20  stop the speedy trial clock in and of itself.  So I don't know

21  if that is going to mean anything to the Court insofar as

22  scheduling this trial.  Let's assume --

23           THE COURT:  I would just ask Mr. Bode that.  I'm not

24  aware of cases that say that the speedy trial clock is stopped

25  by a bail appeal.

Colloquy                                          30

1        MR. BODE:  We looked into this, Your Honor.  Mr.

2  Kabrawala is up on this.  I'm going to allow him to address

3  that if that's okay.

4        THE COURT:  Okay.

5        MR. KABRAWALA:  A speedy trial clock is excluded for

6  any delays resulting from "any interlocutory appeal".  That's

7  18 United States Code 3161(h)(1)(c).  There's a number of cases

8  on point.  The leading case actually happens to be out of the

9  Eleventh Circuit.  It's United States versus Davenport, 935 F.

10 2d 1223.  That's an Eleventh Circuit 1991 case.  But there are

11 a number of cases throughout the country, including within the

12 Second Circuit --

13       THE COURT:  Okay, that's helpful.

14       MR. KABRAWALA:  -- follow that same point.

15       THE COURT:  That's helpful, okay.  So go ahead.

16       MR. LaPINTA:  So let's just assume arguendo that we

17 will file this notice of appeal, obviously it's going to take

18 some time to perfect it, to argue it, for it to be decided.  I

19 would think and expect maybe erroneously that that will push

20 back the trial date.  Is that something that the Court would

21 consider in moving that date or are you interested in still

22 moving it sooner than later even given the appeal issue?

23       THE COURT:  Your client is in jail.  The appeal

24 issue, if you want to appeal that's fine but the sooner you

25 appeal it and it got filed in two weeks, and they came back

1  with you know, a ruling, I don't see, even though the time is

2  excluded, my goal is to get your client to trial as soon as

3  possible.

4          MR. LaPINTA:  I understand.

5          THE COURT:  And so I would still want to try to,

6  regardless of whether you appeal or the result of the appeal

7  is, obviously, I guess if they grant the appeal and say that he

8  should be released, and you may want more time to prepare.

9          MR. LaPINTA:  Right.

10         THE COURT:  But assuming that they don't do that, my

11 goal would be to try the case within, as quickly as possible.

12         MR. LaPINTA:  Okay.

13         THE COURT:  In the same timeframe even if we don't

14 have to.  So I'm just letting you know that if in fact he does

15 not want to waive the time, I think he should assume for at

16 least those purposes, that he's going to continue to be in

17 jail, then you should start thinking about trying to be ready,

18 how long is the trial, Mr. Bode?

19         MR. BODE:  I would estimate Your Honor, four or five

20 trial days at most.

21         THE COURT:  So maybe the week before, May 5th.

22         MR. BODE:  While Mr. LaPinta is on the spot, to put

23 him on the spot just slightly more, Your Honor, I don't know if

24 the defense is planning on trying to suppress the defendant's

25 statements.  If so, we should probably, you know, set a date

**J.A. 42**

1 for them to get those motions in so that we keep, you know,

2 that may also as soon as either a motion is filed or a bail

3 appeal if it materializes is filed, the Government is going to

4 ask at that point that we have a status conference and then we

5 can talk about the date and figure out exactly when it is.  But

6 I would like to, if possible if the defense can do that decide

7 as to the suppression issue, sooner rather than later, given

8 the defendant is not waiving time.

9          THE COURT:  Well, do you want to have another

10 conference or you want to set a date to put in the letter?  I

11 don't want to set a briefing schedule unless you want to on a

12 motion to suppress at this point.

13          MR. LaPINTA:  If you don't mind, this is how I like

14 to approach it.  Let us decide what our next step is, okay?

15          THE COURT:  Okay.

16          MR. LaPINTA:  If for whatever reason the Circuit

17 Court of Appeals grants our application, that may change our

18 disposition in terms of waiving or not waiving any further.

19          THE COURT:  I know, but as you said, you're not going

20 to know for several weeks probably whether they're going to

21 grant the application or not.  I don't want to just waste that

22 time.

23          MR. LaPINTA:  I understand.

24          THE COURT:  I want to be preparing either to have it

25 on May 5th, having a suppression motion.  If you really want to

Colloquy                                              33

1  go forward, I don't think we can sort of wait until they decide

2  it.

3         MR. LaPINTA:  Okay.  I understand.  With that said,

4  let's pick a status date if you're available within 10 days, in

5  10 days.

6         THE COURT:  Okay.  April 2nd, Wednesday at 1:15.

7         MR. KABRAWALA:  That works for us.

8         MR. LaPINTA:  Yes.  Thank you.

9         THE COURT:  Okay.

10         MR. LaPINTA:  Thank you, Your Honor.

11         THE COURT:  Okay.  So we'll issue a short order

12  either today or Monday morning and then the written opinion

13  will follow, okay?

14         MR. LaPINTA:  Yes, sir.

15         MR. KABRAWALA:  If I could ask Your Honor, just

16  because somebody it might be at issue.  I would ask that Your

17  Honor exclude from yesterday to today when the motion was

18  pending.  The defendant had a bail motion pending before Your

19  Honor as of yesterday when they filed.  I would ask that that

20  day be excluded.

21         THE COURT:  Well, that's automatically excluded.  I

22  don't have to make a finding but I agree with you that once you

23  file a motion it is excluded so that they would be excluded.

24         MR. KABRAWALA:  Thank you, Your Honor.

25         THE COURT:  I don't know, you can disagree with that

Colloquy                                    34

1  but.

2          MR. LaPINTA:  It doesn't really matter.

3          THE COURT:  Okay.

4          MR. KABRAWALA:  It might matter someday.  One day can

5  make a difference.

6          THE COURT:  All right.

7          MR. LaPINTA:  I don't anticipate it will.  Thank you.

8          THE COURT:  Thank you.

9                      * * * * *

10                **C E R T I F I C A T I O N**

11          I, Tracy Gribben, court approved transcriber, certify

12  that the foregoing is a correct transcript from the official

13  digital audio recording of the proceedings in the

14  above-entitled matter.

15

16  _____

17  /S/TRACY GRIBBEN

18  TRACY GRIBBEN TRANSCRIPTION, LLC           March 24, 2014

19

20

21

22

23

24

25

**J.A. 45**

1

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

-------------------------------X

UNITED STATES OF AMERICA,           :     14 CR 0094

     v.                            :     U.S. Courthouse
                                         Central Islip, N.Y.

JOSEPH VALERIO,                      :
                                      TRANSCRIPT OF MOTION
           Defendant.     :

                                      August 26, 2014
-------------------------------X     11:50 a.m.

BEFORE:

      HONORABLE JOSEPH F. BIANCO, U.S.D.J.


APPEARANCES:

For the Government:   LORETTA E. LYNCH
                     United States Attorney
                     100 Federal Plaza
                     Central Islip, New York 11722
                     By:  AMEET B. KABRAWALA, ESQ.
                         ALLEN BODE, ESQ.
                         Assistants, U.S. Attorney


For the Defendant:   LEONARD LATO, ESQ.
                    ANTHONY LaPINTA, ESQ.


Court Reporter:      HARRY RAPAPORT, C.S.R.
                    United States District Court
                    100 Federal Plaza
                    Central Islip, New York 11722
                    (631) 712-6105


Proceedings recorded by mechanical stenography.
Transcript produced by computer-assisted transcription.

**J.A. 46**

2

1          THE CLERK:  Calling 14 CR O94.  United States

2   against Joseph Valerio.

3          Appearances, please.

4          MR. KABRAWALA:  Good morning, your Honor.

5          Ameet Kabrawala has for the government, joined

6   by AUSA Allen Bode.

7          THE COURT:  Good morning.

8          MR. LaPINTA:  Good morning, your Honor.

9          Appearing for Joseph Valerio, Anthony LaPinta

10   and co-counsel Lenny Lato.

11          THE COURT:  Good morning.

12          Mr. Valerio is here as well.

13          We scheduled this for a bail application; is

14   that correct?

15          MR. LaPINTA:  Yes, sir.

16          THE COURT:  I will hear from you first.

17          MR. LaPINTA:  Thank you.

18          Shall I use the microphone?

19          THE COURT:  Sure.

20          MR. LaPINTA:  Your Honor.

21          I'm certain that you recall our previous

22   applications, and for the sake of expediency I will not go

23   into much detail the previous conditions of bail that we

24   have tendered for the Court for your consideration, except

25   to say that in my estimation it was an unprecedented bail

**J.A. 47**

3

1    package, obviously not good enough, to satisfy the Court

2    regarding the bail conditions that you were obliged to

3    consider.

4              We now come before the Court with other

5    conditions with respect to our previous denial.

6              We are aware of the defenses and I'm sure you

7    are aware of the recent turn of events with the arrest and

8    prosecution of the co-defendant involved here.

9              But with that said, I don't think that arrest,

10   or the circumstances involving that arrest change any of

11   the other factors you should consider in addressing the

12   bail package.

13             The indictment does not charge Mr. Valerio with

14   having a direct contact with the subject minors.  He is

15   charged under the theory of aiding and abetting.

16             As we moved forward in the past we have put

17   together a package that addresses the 3142 factors of risk

18   of flight and danger to the community.

19             We have offered a secured bail package of three

20   million dollars secured by a number of different real

21   estate properties:  My client's Smithtown residence, his

22   mother's Massapequa home, the family's east end Hamptons

23   residence, and a commercial property that is located in

24   Massapequa.  The total equity value of all those

25   properties I think even exceeds three million dollars.

**J.A. 48**

4

1    We also tendered to the Court a number of unique

2  circumstances, and again, I will go through them quickly,

3  that Mr. Valerio upon his release would be limited to

4  residing at his mother's home in Massapequa.  It is her

5  family home, your Honor, that she has owned over thirty

6  years.

7    By being at that residence she would be in his

8  company twenty-four hours, seven days a week.

9    There would be a number of conditions involving

10  Mr. Valerio's presence at that home.  Most importantly,

11  that he would be under home confinement monitored by

12  electronic bracelets.

13    Your Honor, over and above the security issues

14  that the bracelet would address, we have previously

15  installed with the FBI's approval and inspection a home

16  surveillance system, state of the art home surveillance

17  system, that is linked into the FBI headquarters in their

18  computer network, where they would have access upon their

19  request, twenty-four hour seven-day a week access.

20    While living at Mrs. Valerio's home in

21  Massapequa there would be a strict limitation as to who

22  would be allowed to visit that home.

23    We would consent to no persons under the age of

24  eighteen to be present.  And we would tender a very, very

25  short list of close family relatives to be approved and

**J.A. 49**

5

1    investigated by the FBI that would gain access to the home

2    to visit Mr. Valerio at the pre-approved times with the

3    FBI.

4              We have agreed to random searches of the home by

5    either Pretrial Services and/or the FBI, twenty-four hours

6    seven day a week access.

7              The video surveillance system of the home covers

8    the total circumference of the area, with, as I said

9    before, state of the art cameras that would be roving the

10   area, and also recording what is being filmed at the

11   particular time, all on a hard drive that is secured and

12   locked in an unaccessible place in the home, and also

13   transmitted to the FBI.

14             There would be a strict prohibition of no cell

15   phones, no computers, no iPads, simply no electronic

16   devices whatsoever would be allowed into that home.  And

17   each person that would come and go, however few there may

18   be, would be subject to search of their personal property

19   and being.

20             Previously we have tendered two pre-approved

21   qualified license security guards that would be positioned

22   inside or outside the home upon the government 's request

23   and desire.   And we now offer four paid qualified

24   licensed former law enforcement security guards to monitor

25   that home.

**J.A. 50**

**6**

1        We offer that two of the security guards would

2    be placed outside the residence and be responsible for

3    roving security of the home, constantly doing shifts of

4    walking around the house, one being positioned full time

5    in the back, one being positioned full time in the front

6    of the home, and two security guards being placed inside

7    the home, so that there is no doubt whatsoever that

8    Mr. Valerio's whereabouts are supervised in every regard

9    humanly possible.  And that would include access to the

10   bathroom, and any and all areas of that house.  We have no

11   problems with respect to that.

12        Obviously, four guards are double that of two

13   guards.  And we are willing to have the FBI and/or the

14   U.S. Attorney's Office determine at their discretion

15   whether any of those guards would be armed or not.

16        Perhaps the ones outside can be armed, and/or

17   the ones inside.  But we have no problem with meeting that

18   condition to -- leaving that condition to their sole

19   discretion.

20        I cannot think of any other bail package that

21   could be put together to address the 3142 factors that the

22   Court will be considering upon this application.

23        I think in denying this application you are

24   basically saying even an army of security guards, perhaps

25   even with aerial surveillance, would not suffice under

# J.A. 51

7

1  this circumstance.

2          I think that this bail format would allow

3  Mr. Valerio's release under these compelling

4  circumstances.

5          I have read your previous decision.  I'm well

6  aware of the law you cited.  I will not sit here and

7  reargue that law.  You have it at your fingertips, if not

8  your memory.

9          But I will address the Court and refer the Court

10  to our March 5th submission that details the applicable

11  law and compelling issues that I'm again repeating to the

12  Court, would be an added layer of protection with now four

13  security guards.

14          I would ask the Court upon deciding this motion,

15  if you could issue a written order, as you always do

16  promptly, and at your first opportunity.  And I'm happy to

17  address any questions or concerns that this package poses

18  to the Court.

19          As you are aware Mr. Valerio was initially given

20  his bail package.  He remained at this location for I

21  believe, and don't quote me to exactly, but close to two

22  weeks.

23          Upon the charging of the second charge, count

24  two of this indictment where we were back before the Court

25  where he was remanded and continues to be at custody at

8

1    the MDC.

2           Present in court is his mother, Mrs. Valerio,

3    and his sister, who has shown him unconditional support

4    through this ordeal, and will continue to support him

5    however humanly possible both physically, emotionally and

6    financially, to support Joseph Valerio.

7           Let me just consult with Mr. Lato and if you can

8    give me one moment.

9           (Whereupon, at this time there was a pause in

10   the proceedings.)

11          MR. LaPINTA:  With that said, your Honor, I'm

12   happy to field any questions you may have.

13          THE COURT:  I want to make sure I understand

14   what modifications you have made to the prior package.

15          My recollection of that package is you proposed

16   all the other aspects, and the only difference is four

17   guards verse two; is that correct?

18          MR. LaPINTA:  Yes.

19          THE COURT:  And the home surveillance system

20   that you say was installed was installed when he was first

21   on bail; is that correct?

22          MR. LaPINTA:  It was, and it is still there.

23          THE COURT:  And that is of the perimeter of the

24   house?

25          MR. LaPINTA:  Yes.

**J.A. 53**

9

1    THE COURT:  Okay.

2    MR. LaPINTA:  One other thing as well.

3        There is a home security system in place

4    separate and apart from that which was previously there,

5    that wires the windows and the doors, that we are also

6    able to set upon a pass code that only the government

7    and/or the security guards would know.

8        Once again, your Honor, that new security system

9    was installed four or five months ago.  We are more than

10    willing to have that house examined once again, and

11    searched thoroughly as it was the first time.

12        They would have unfettered access to that home

13    at any time seven days a week.

14    THE COURT:  Thank you.

15    I have no questions.

16    Mr. Kabrawala.

17    MR. KABRAWALA:  As the Court pointed out there

18    is really only one difference between the bail package

19    that was previously proposed and ruled upon and today's

20    bail package, and that is the presence of two additional

21    security officers, either within the house or outside the

22    house.

23        This represents an immaterial change in the

24    government's view given the Court's very thorough opinion

25    where the Court found that there are no conditions or

# J.A. 54

1   combination of conditions that can reasonably assure the

2   defendant would be returned to court and the safety of the

3   community.

4          I would point out even with additional guards

5   there is no way to prevent an electronic device, a small

6   device like this Blackberry, from entering the home, from

7   being inside the home.

8          The additional administrative burden is of any

9   private security guards that would be monitoring

10  Mr. Valerio in his home or outside his home, those

11  administrative burdens are not something that is

12  contemplated by the Bail Reform Act.  And it would

13  certainly require the U.S. Attorney's Office and the FBI

14  to expend resources in investigating and monitoring the

15  electronic surveillance outside Mr. Valerio's home and

16  monitoring the private security officers.

17         With respect to the flight risk, your Honor,

18  upon a conviction, where the defendant would face

19  mandatory incarceration after the conviction given the

20  nature of the offense, the Court would not have an option

21  with respect to the mandatory minimum.  And moreover,

22  Judge, the term of imprisonment would be stacked.  That is

23  it can be considered consecutively.  And the government

24  would, if there is a conviction after trial, ask the Court

25  to sentence the defendant to a consecutive term, which

**J.A. 55**

1   would ultimately result in the defendant being

2   incarcerated for the rest of his natural life.  If you

3   were to count the mandatory minimums or statutory maximums

4   it would result in hundreds of years incarceration with

5   respect to the trial.

6           With respect to flight risk, Judge, those are

7   factors the Court should consider.

8           The defendant also has ties to Slovakia among

9   other places.  He has a girlfriend who is a Slovakian

10  national.

11          Frankly, in preparing the case for trial which

12  is pending within a few weeks, the government's case only

13  got stronger through emails and other evidence that the

14  government has.  And frankly, the evidence is overwhelming

15  that the Court mentioned initially in the initial remarks

16  with respect to the bail application.

17          Just to clarify, there was a comment earlier

18  with respect to the charge.  As your Honor is aware, it is

19  not simply an aiding and abetting theory.  There are at

20  least two conspiracy counts.  And there are nine separate

21  attempt counts, attempting to exploit the child.  Those

22  are not merely aiding and abetting.  Even if they were

23  aiding and abetting the defendant certainly can be held

24  accountable and responsible for the crimes.

25          I will just take one moment to confer with my

# J.A. 56

1  colleague.

2          (Whereupon, at this time there was a pause in

3  the proceedings.)

4          MR. KABRAWALA:  That is it, Judge.  Thank you.

5          THE COURT:  Thank you.

6  Do you want one minute to respond?

7          MR. LATO:  Yes.  Let me confer a second, please?

8           (Counsel confer.)

9          MR. LaPINTA:  Briefly, your Honor.

10          Regarding the concern about smuggling a device

11  as small as a Blackberry, your Honor.

12          Whoever comes in and out of the house will get

13  searched upon entering or exiting.  Not only will there be

14  a physical search, but there is access to magnetometer

15  wands to be used.  The guards will have access to that.

16          There is just no way that there is going to be

17  anything delivered into that house with this package being

18  presented.

19          Administrative burdens, the whole purpose of

20  getting an army of security guards is to alleviate the

21  administrative burdens on the government.  In fact, the

22  government can pick and choose what burden they wish to

23  undertake.

24          They can call the person in charge of the

25  security team on a daily basis.  They can look at the live

**J.A. 57**

13

1    stream video at their desire, at their time, at their

2    convenience.  It is only as much as an administrative

3    burden as they want it to be.

4              Mandatory minimums, that hasn't changed.  The

5    initial charge he was facing was a 15 year.  We have had

6    knowledge of these charges moving forward.  We are well

7    aware of his exposure.

8              However, I believe that this package adequately

9    addresses any risk of flight concern regarding the

10   mandatory minimums, and the discretionary consecutive time

11   that is faced.

12             The ties to Slovakia, I don't know what possible

13   ties he could have given these monumental restraints.

14   Perhaps counsel can vision him to fly overseas.  But I

15   don't know how he will have any ties to Slovakia.  He

16   submitted his passport.  It is a stacking of concerns that

17   are nipped in the bud by the package that we presented.

18             Indeed the trial is imminent.  He is entitled to

19   his characterization of overwhelming evidence.  I'm

20   entitled to my characterization, and the very compelling

21   factual issues that are involved in this case, that will

22   come forward in this trial.

23             With that said, once again, I'm offering myself

24   to answer any questions to any concerns you may have.

25             THE COURT:  No.  Thank you.

**14**

1    I will place the Court's ruling on the record

2    and order, as we have done with the other rulings.

3    The Court is denying the renewed bail

4    application for the following reasons. And I will not

5    rehash the Court's previous recitation of the factors and

6    the reasons for the decision. I will be focused more, and

7    I will reiterate some things I mentioned previously. But

8    I will focus more on the differences between this package

9    and the last bail package.

10    The first thing is, although certainly this is a

11    very substantial package, I don't think it is a

12    non-precedented package. As we know from case law there

13    are other situations where defendants have proposed

14    creating a jail in their homes. So it is not

15    unprecedented in terms of the conditions being offered

16    here, and all those kind of conditions may be sufficient

17    under certain circumstances. I find that they are

18    insufficient here.

19    My ruling was not that the conditions be -- it

20    was not just that the conditions to be proposed were

21    insufficient to address the issue of danger or risk of

22    flight. If I had thought they were, I would have said if

23    he had a guard or two, I would have been satisfied.

24    My conclusion was that this defendant, given the

25    nature of the charges here, the overwhelming evidence that

**15**

1    the government has proffered, and the manner in which this

2    crime is alleged to have been committed with respect to

3    the sexual exploitations of a child through electronic

4    meetings, that I concluded that the only way to reasonably

5    be assured of the safety of the community -- obviously

6    flight is an issue as well -- but focusing on the danger

7    to the community for the moment, was for him to be in

8    jailed conditions.

9            What defense counsel has sought to do here is to

10   create a jail as best they can in the mother's home in

11   this case.  But I just reiterate what I said previously on

12   that issue, first, I believe this is an imperfect

13   replication of the jail conditions.  Although obviously,

14   the guards do add a significant component, it is still not

15   as good as a jail is, contingent to some extent on the

16   competency and quality to the guards.  It is contingent on

17   the nature of the defendant's relationship with everyone

18   who enters the home.

19           While certainly you have those risks in jail,

20   but they are not the same in terms of how substantial the

21   risks are.  Those risks are much higher when you introduce

22   the variables of someone being in a home where there is a

23   security firm of four guards monitoring it, and you have

24   people, however narrowly you define the people who are

25   permitted to come in and out of the home.

**J.A. 60**

16

1    So, I believe it is an imperfect replication of

2    jail, and I think it is significant under the case law to

3    support this.  Even if I were to determine it was

4    essentially the equivalent of a jail, I think the

5    government is correct, and the Second Circuit made it

6    clear that courts are not required to replicate, or allow

7    a defendant to replicate a jail in his home, because it

8    does add administrative burdens on the government.

9        For example, here the government has to

10   potentially monitor a home surveillance system, where what

11   is going on outside the home is not what is going on

12   inside the home.  They would have to conduct random

13   searches.  They would have to monitor how good the

14   security guards are doing, who they are hiring, how they

15   are performing.  All those things are administrative

16   burdens that the FBI would have take on in order to assure

17   that jail-like conditions are being imposed on the

18   defendant.

19        The government is not required to do that.

20   Although Mr. Lapinta points out it is up to the government

21   to determine how much of a burden they want it to be.  But

22   the fact of the matter is if the government is going to be

23   assured it is a jail-like condition they would have to

24   take on all the conditions.  Otherwise they would be

25   hoping all these things would be done in a manner assuring

17

1   the safety of the community and the defendant's

2   appearance.

3           I will not go through all the case law, but the

4   case law is clear that the government is not required to

5   take on those additional administrative burdens, United

6   States versus Banki, 369 Fed. APPX 152, Second Circuit

7   2010.  And there are other conditions cited in other

8   courts around the country.  I agree with the those

9   decisions.

10          I also note the decision is unclear as to

11  whether private security personnel have legal authority to

12  use legal force if allowed in this type of situation, and

13  I think it is unclear to me of how that would function.  I

14  don't believe under the circumstances of this case that

15  this replicates jail, even if it did, that the government

16  has to take on that burden to perform the administrative

17  burdens necessary.

18          I emphasize two things here.  I'm not precluding

19  that when someone is charged with using electronic means

20  to engage in possession of child pornography, or the more

21  significant charge of distributing or sexual exploitation,

22  that those people automatically must be in jail.  I do not

23  reach that conclusion here.  I'm analyzing the particular

24  facts of this case, taking all the factors that I

25  previously referred to, and I believe as I previously

**J.A. 62**

18

1  noted, I have several defendants who are involved with

2  possession of sexual pornography and charged with that,

3  who are on bail.  I'm not reaching that conclusion here.

4         This is a fact-based conclusion based on the

5  circumstances of this particular case.  And I'm also not

6  concluding that the use of guards is not sufficient to

7  address the various issues of danger in other

8  circumstances.  I can't remember a case where there has

9  been proposed or acceptance by the Court -- it is not

10  proposed often because of the cost.  I know other courts

11  have done that, and there are cases, such as financial

12  cases and other cases, where they may be sufficient to

13  satisfy the criteria under the Bail Reform Act.  But this

14  is not one of those cases.  The nature of the crimes

15  charged here, the manner in which it is charged to have

16  been committed, the overwhelming evidence the government

17  has proffered, all lead to the conclusion that the

18  defendant needs to be incarcerated pending a trial, which

19  is about to take place shortly.

20         I think we have a status conference scheduled

21  next week; is that right?

22         MR. KABRAWALA:  Actually it is September 3rd,

23  your Honor.

24         THE COURT:  All right.

25         We will go forward on that day with that

**J.A. 63**

19

1    conference.

2          Obviously, the trial is already scheduled as

3    well.

4          Any issue either side wishes to address today?

5          MR. KABRAWALA:  Not from the government.

6          MR. LaPINTA:  No, sir, thank you.

7          THE COURT:  Thank you.

8

9

10          (End of proceedings.)

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

PSS:ALB/ABK
F.# 2014R00151

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - -X

UNITED STATES OF AMERICA

    - against -

JOSEPH VALERIO,

          Defendant.

- - - - - - - - - - - - - - - -X

F I L E D
IN CLERK'S OFFICE
U.S. DISTRICT COURT E.D.N.Y.

★ APR 09 2014 ★

LONG ISLAND OFFICE

S U P E R S E D I N G
I N D I C T M E N T

Cr. No.<u>14-094 (S-2)(JFB)</u>
(T. 18, U.S.C., §§
2251(a), 2251(c), 2251(e),
2252(a)(1), 2252(a)(2),
2252(b)(1), 2252(a)(4)(B),
2252(b)(2), 2253, 2 and 3551
<u>et seq.</u>; T. 21, U.S.C., §
853(p))

THE GRAND JURY CHARGES:

COUNT ONE
(Conspiracy to Sexually Exploit a Child)

      1.    On or about and between April 1, 2012 and November 1, 2012, both dates being approximate and inclusive, within the Eastern District of New York and elsewhere, the defendant JOSEPH VALERIO, together with others, did knowingly and intentionally conspire to employ, use, persuade, induce, entice and coerce a minor, to wit: Jane Doe #1, an individual whose identity is known to the Grand Jury, to engage in sexually explicit conduct, for the purpose of producing one or more visual depictions of such conduct, knowing and having reason to know that such visual depictions would be transported and transmitted using a means and facility of interstate and foreign commerce and which were in and affecting interstate and

foreign commerce, which visual depictions were produced and transmitted using materials that had been mailed, shipped and transported in and affecting interstate and foreign commerce by any means, to wit: one or more mobile telephones, digital cameras and digital media disks, and such visual depictions were actually transported and transmitted using a means and facility of interstate and foreign commerce and which were in and affecting interstate and foreign commerce, contrary to Title 18, United States Code, Section 2251(a).

(Title 18, United States Code, Sections 2251(e) and 3551 et seq.)

### COUNT TWO
(Sexual Exploitation of a Child)

2. On or about and between April 1, 2012 and November 1, 2012, both dates being approximate and inclusive, within the Eastern District of New York and elsewhere, the defendant JOSEPH VALERIO, together with others, did knowingly and intentionally employ, use, persuade, induce, entice and coerce a minor, to wit: Jane Doe #1, to engage in sexually explicit conduct, for the purpose of producing one or more visual depictions of such conduct, knowing and having reason to know that such visual depictions would be transported and transmitted using a means and facility of interstate and foreign commerce and which were in and affecting interstate and foreign commerce, which visual depictions were produced and

transmitted using materials that had been mailed, shipped and transported in and affecting interstate and foreign commerce by any means, to wit: one or more mobile telephones, digital cameras and digital media disks, and such visual depictions were actually transported and transmitted using a means and facility of interstate and foreign commerce and which were in and affecting interstate and foreign commerce.

(Title 18, United States Code, Sections 2251(a), 2251(e), 2 and 3551 et seq.)

COUNT THREE
(Sexual Exploitation of a Child)

3.    On or about and between April 1, 2012 and November 1, 2012, both dates being approximate and inclusive, within the Eastern District of New York and elsewhere, the defendant JOSEPH VALERIO, together with others, did knowingly and intentionally employ, use, persuade, induce, entice and coerce a minor, to wit: Jane Doe #1, to engage in sexually explicit conduct outside of the United States, its territories and possessions, for the purpose of producing one or more visual depictions of such conduct, intending that such visual depictions would be transported and transmitted to the United States, its territories and possessions, using a means and facility of interstate and foreign commerce and mail, and which visual depictions were actually transported and transmitted to the

United States, its territories and possessions, using a means and facility of interstate and foreign commerce and mail.

(Title 18, United States Code, Sections 2251(c), 2251(e), 2 and 3551 et seq.)

## COUNT FOUR
### (Transportation of Child Pornography)

4. On or about and between April 1, 2012 and November 1, 2012, both dates being approximate and inclusive, within the Eastern District of New York and elsewhere, the defendant JOSEPH VALERIO, together with others, did knowingly and intentionally transport and ship, using a means and facility of interstate and foreign commerce and in and affecting interstate and foreign commerce, one or more visual depictions, to wit: images depicting Jane Doe #1 engaged in sexually explicit conduct, the production of such visual depictions having involved the use of a minor engaging in sexually explicit conduct, and such visual depictions were of such conduct.

(Title 18, United States Code, Sections 2252(a)(1), 2252(b)(1), 2 and 3551 et seq.)

## COUNT FIVE
### (Receipt of Child Pornography)

5. On or about and between April 1, 2012 and November 1, 2012, both dates being approximate and inclusive, within the Eastern District of New York and elsewhere, the defendant JOSEPH

VALERIO, together with others, did knowingly and intentionally receive one or more visual depictions, to wit: images depicting Jane Doe #1 engaged in sexually explicit conduct, using a means and facility of interstate and foreign commerce and which visual depictions had been mailed, and shipped and transported in and affecting interstate and foreign commerce, the production of such visual depictions having involved the use of one or more minors engaging in sexually explicit conduct and such visual depictions were of such conduct.

(Title 18, United States Code, Sections 2252(a)(2), 2252(b)(1), 2 and 3551 et seq.)

### COUNT SIX
(Attempted Sexual Exploitation of a Child)

6.    On or about January 23, 2012, within the Eastern District of New York and elsewhere, the defendant JOSEPH VALERIO, together with others, did knowingly and intentionally attempt to employ, use, persuade, induce, entice and coerce a minor, to wit: Jane Doe #1, to engage in sexually explicit conduct, for the purpose of producing one or more visual depictions of such conduct, knowing and having reason to know that such visual depictions would be transported and transmitted using a means and facility of interstate and foreign commerce and which were in and affecting interstate and foreign commerce, which visual depictions were produced and transmitted using materials that had been mailed, shipped and

transported in and affecting interstate and foreign commerce by any means, including by one or more mobile telephones, digital cameras, digital media disks and computer, and such visual depictions were actually transported and transmitted using a means and facility of interstate and foreign commerce and which were in and affecting interstate and foreign commerce, contrary to Title 18, United States Code, Section 2251(a).

(Title 18, United States Code, Sections 2251(e), 2 and 3551 et seq.)

<u>COUNT SEVEN</u>
(Attempted Sexual Exploitation of a Child)

7. On or about January 24, 2012, within the Eastern District of New York and elsewhere, the defendant JOSEPH VALERIO, together with others, did knowingly and intentionally attempt to employ, use, persuade, induce, entice and coerce a minor, to wit: Jane Doe #1, to engage in sexually explicit conduct, for the purpose of producing one or more visual depictions of such conduct, knowing and having reason to know that such visual depictions would be transported and transmitted using a means and facility of interstate and foreign commerce and which were in and affecting interstate and foreign commerce, which visual depictions were produced and transmitted using materials that had been mailed, shipped and transported in and affecting interstate and foreign commerce by any means, including by one or more mobile telephones, digital cameras,

digital media disks and computer, and such visual depictions were actually transported and transmitted using a means and facility of interstate and foreign commerce and which were in and affecting interstate and foreign commerce, contrary to Title 18, United States Code, Section 2251(a).

(Title 18, United States Code, Sections 2251(e), 2 and 3551 et seq.)

### COUNT EIGHT
#### (Attempted Sexual Exploitation of a Child)

8. On or about March 28, 2012, within the Eastern District of New York and elsewhere, the defendant JOSEPH VALERIO, together with others, did knowingly and intentionally attempt to employ, use, persuade, induce, entice and coerce a minor, to wit: Jane Doe #1, to engage in sexually explicit conduct, for the purpose of producing one or more visual depictions of such conduct, knowing and having reason to know that such visual depictions would be transported and transmitted using a means and facility of interstate and foreign commerce and which were in and affecting interstate and foreign commerce, which visual depictions were produced and transmitted using materials that had been mailed, shipped and transported in and affecting interstate and foreign commerce by any means, including by one or more mobile telephones, digital cameras, digital media disks and computer, and such visual depictions were actually transported and transmitted using a means and facility of

interstate and foreign commerce and which were in and affecting interstate and foreign commerce, contrary to Title 18, United States Code, Section 2251(a).

(Title 18, United States Code, Sections 2251(e), 2 and 3551 et seq.)

COUNT NINE
(Attempted Sexual Exploitation of a Child)

9.    On or about April 4, 2012, within the Eastern District of New York and elsewhere, the defendant JOSEPH VALERIO, together with others, did knowingly and intentionally attempt to employ, use, persuade, induce, entice and coerce a minor, to wit: Jane Doe #1, to engage in sexually explicit conduct, for the purpose of producing one or more visual depictions of such conduct, knowing and having reason to know that such visual depictions would be transported and transmitted using a means and facility of interstate and foreign commerce and which were in and affecting interstate and foreign commerce, which visual depictions were produced and transmitted using materials that had been mailed, shipped and transported in and affecting interstate and foreign commerce by any means, including by one or more mobile telephones, digital cameras, digital media disks and computer, and such visual depictions were actually transported and transmitted using a means and facility of interstate

and foreign commerce and which were in and affecting interstate and foreign commerce, contrary to Title 18, United States Code, Section 2251(a).

(Title 18, United States Code, Sections 2251(e), 2 and 3551 et seq.)

<u>COUNT TEN</u>
(Attempted Sexual Exploitation of a Child)

10. On or about July 16, 2012, within the Eastern District of New York and elsewhere, the defendant JOSEPH VALERIO, together with others, did knowingly and intentionally attempt to employ, use, persuade, induce, entice and coerce a minor, to wit: Jane Doe #1, to engage in sexually explicit conduct, for the purpose of producing one or more visual depictions of such conduct, knowing and having reason to know that such visual depictions would be transported and transmitted using a means and facility of interstate and foreign commerce and which were in and affecting interstate and foreign commerce, which visual depictions were produced and transmitted using materials that had been mailed, shipped and transported in and affecting interstate and foreign commerce by any means, including by one or more mobile telephones, digital cameras, digital media disks and computer, and such visual depictions were actually transported and transmitted using a means and facility of interstate

and foreign commerce and which were in and affecting interstate and foreign commerce, contrary to Title 18, United States Code, Section 2251(a).

(Title 18, United States Code, Sections 2251(e), 2 and 3551 et seq.)

COUNT ELEVEN
(Attempted Sexual Exploitation of a Child)

11.   On or about July 22, 2012, within the Eastern District of New York and elsewhere, the defendant JOSEPH VALERIO, together with others, did knowingly and intentionally attempt to employ, use, persuade, induce, entice and coerce a minor, to wit: Jane Doe #1, to engage in sexually explicit conduct, for the purpose of producing one or more visual depictions of such conduct, knowing and having reason to know that such visual depictions would be transported and transmitted using a means and facility of interstate and foreign commerce and which were in and affecting interstate and foreign commerce, which visual depictions were produced and transmitted using materials that had been mailed, shipped and transported in and affecting interstate and foreign commerce by any means, including by one or more mobile telephones, digital cameras, digital media disks and computer, and such visual depictions were actually transported and transmitted using a means and facility of interstate

and foreign commerce and which were in and affecting interstate and foreign commerce, contrary to Title 18, United States Code, Section 2251(a).

(Title 18, United States Code, Sections 2251(e), 2 and 3551 et seq.)

### COUNT TWELVE
(Attempted Sexual Exploitation of a Child)

12. On or about September 6, 2012, within the Eastern District of New York and elsewhere, the defendant JOSEPH VALERIO, together with others, did knowingly and intentionally attempt to employ, use, persuade, induce, entice and coerce a minor, to wit: Jane Doe #1, to engage in sexually explicit conduct, for the purpose of producing one or more visual depictions of such conduct, knowing and having reason to know that such visual depictions would be transported and transmitted using a means and facility of interstate and foreign commerce and which were in and affecting interstate and foreign commerce, which visual depictions were produced and transmitted using materials that had been mailed, shipped and transported in and affecting interstate and foreign commerce by any means, including by one or more mobile telephones, digital cameras, digital media disks and computer, and such visual depictions were actually transported and transmitted using a means and facility of

12

interstate and foreign commerce and which were in and affecting interstate and foreign commerce, contrary to Title 18, United States Code, Section 2251(a).

(Title 18, United States Code, Sections 2251(e), 2 and 3551 et seq.)

### COUNT THIRTEEN
(Attempted Sexual Exploitation of a Child)

13. On or about September 27, 2012, within the Eastern District of New York and elsewhere, the defendant JOSEPH VALERIO, together with others, did knowingly and intentionally attempt to employ, use, persuade, induce, entice and coerce a minor, to wit: Jane Doe #1, to engage in sexually explicit conduct, for the purpose of producing one or more visual depictions of such conduct, knowing and having reason to know that such visual depictions would be transported and transmitted using a means and facility of interstate and foreign commerce and which were in and affecting interstate and foreign commerce, which visual depictions were produced and transmitted using materials that had been mailed, shipped and transported in and affecting interstate and foreign commerce by any means, including by one or more mobile telephones, digital cameras, digital media disks and computer, and such visual depictions were actually transported and transmitted using a means and facility of

interstate and foreign commerce and which were in and affecting interstate and foreign commerce, contrary to Title 18, United States Code, Section 2251(a).

(Title 18, United States Code, Sections 2251(e), 2 and 3551 et seq.)

### COUNT FOURTEEN
(Attempted Sexual Exploitation of a Child)

14.  On or about December 12, 2013, within the Eastern District of New York and elsewhere, the defendant JOSEPH VALERIO, together with others, did knowingly and intentionally attempt to employ, use, persuade, induce, entice and coerce a minor, to wit: Jane Doe #1, to engage in sexually explicit conduct, for the purpose of producing one or more visual depictions of such conduct, knowing and having reason to know that such visual depictions would be transported and transmitted using a means and facility of interstate and foreign commerce and which were in and affecting interstate and foreign commerce, which visual depictions were produced and transmitted using materials that had been mailed, shipped and transported in and affecting interstate and foreign commerce by any means, including by one or more mobile telephones, digital cameras, digital media disks and computer, and such visual depictions were actually transported and transmitted using a means and facility of



interstate and foreign commerce and which were in and affecting

interstate and foreign commerce, contrary to Title 18, United States

Code, Section 2251(a).

(Title 18, United States Code, Sections 2251(e), 2 and 3551

et seq.)

### COUNT FIFTEEN
#### (Sexual Exploitation of a Child)

15.   On or about and between September 10, 2010 and January

19, 2011, both dates being approximate and inclusive, within the

Eastern District of New York and elsewhere, the defendant JOSEPH

VALERIO did knowingly and intentionally employ, use, persuade,

induce, entice and coerce a minor, to wit: Jane Doe #2, an individual

whose identity is known to the Grand Jury, to engage in sexually

explicit conduct, for the purpose of producing one or more visual

depictions of such conduct, which visual depictions were produced

and transmitted using materials that had been mailed, shipped and

transported in and affecting interstate and foreign commerce by any

means, to wit: one or more digital cameras, memory cards and computer

equipment, and such visual depictions were actually transported and

transmitted using a means and facility of interstate and foreign

commerce and which were in and affecting interstate and foreign

commerce.

(Title 18, United States Code, Sections 2251(a), 2251(e)

and 3551 et seq.)

COUNT SIXTEEN
(Possession of Child Pornography)

16.    On or about January 28, 2014, within the Eastern
District of New York, the defendant JOSEPH VALERIO did knowingly and
intentionally possess matter containing one or more visual
depictions, to wit: images in digital files, in and affecting
interstate and foreign commerce, and which visual depictions had been
mailed, and shipped and transported using a means and facility of
interstate and foreign commerce, and which were produced using
materials which had been mailed, and so shipped and transported, the
production of such visual depictions having involved the use of one
or more minors engaging in sexually explicit conduct, and such visual
depictions were of such conduct.

(Title 18, United States Code, Sections 2252(a)(4)(B),
2252(b)(2) and 3551 et seq.)

CRIMINAL FORFEITURE ALLEGATION

17.    The United States hereby gives notice to the
defendant charged in Counts One through Sixteen that, upon his
conviction of any of the charged offenses, the government will seek
forfeiture in accordance with Title 18, United States Code, Section
2253, of (a) any visual depiction described in Section 2251, 2251A,
2252, 2252A, 2252B, or 2260 of Title 18, United States Code, or any
book, magazine, periodical, film, videotape, or other matter which
contains any such visual depiction, which was produced, transported,

mailed, shipped or received in violation of such sections; (b) any property, real or personal, constituting or traceable to gross profits or other proceeds obtained from the offense(s) of conviction; and (c) any property, real or personal, used or intended to be used to commit or to promote the commission of the offense(s) of conviction or any property traceable to such property, including, but not limited to:

a.    One Apple Macbook Pro, serial number unknown;

b.    One Dell laptop, serial number H7LQG31;

c.    One V Premier desktop computer, serial number P80003011134;

d.    One 4 gigabyte SD Card, no serial number; and

e.    The real property and premises located at 3 High Gate Drive, Smithtown, New York 11787, together with its respective buildings, appurtenances, improvements, fixtures, attachments, easements and furnishings, designated as District 473400, Section 50, Block 5 and Lot 23 on the Suffolk County Tax Map, and all proceeds traceable thereto.

18.  If any of the above-described forfeitable property, as a result of any act or omission of the defendant:

a.  cannot be located upon the exercise of due diligence;

b.  has been transferred or sold to, or deposited with, a third party;

c.  has been placed beyond the jurisdiction of the court;

d.  has been substantially diminished in value; or

e.  has been commingled with other property which cannot be divided without difficulty;

it is the intent of the United States, pursuant to Title 21, United States Code, Section 853(p), as incorporated by Title 18, United States Code, Section 2253(b), to seek forfeiture of any other

18

property of the defendant up to the value of the forfeitable property described in this forfeiture allegation.

(Title 18, United States Code, Section 2253; Title 21, United States Code, Section 853(p))

A TRUE BILL

_Deltre Digiorgu_
FOREPERSON

_Loretta E. Lynch_
LORETTA E. LYNCH
UNITED STATES ATTORNEY
EASTERN DISTRICT OF NEW YORK

# UNITED STATES DISTRICT COURT

EASTERN *District of* NEW YORK

## CRIMINAL DIVISION

## THE UNITED STATES OF AMERICA

- *against –*

## JOSEPH VALERIO,

Defendant.

# INDICTMENT

(T. 18, U.S.C., §§ 2251(a), 2251(c), 2251(e), 2252(a)(1), 2252(a)(2),
2252(b)(1), 2252(a)(4)(B), 2252(b)(2), 2253, 2 and 3551 et seq.;
T. 21, U.S.C., § 853(p))

*A true bill.*

*Cettie Di Giorgio*

_____
*Foreman*

*Filed in open court this* _____ *day,*

*of* _____ *A.D. 20* _____

_____
*Clerk*

*Bail, $* _____

_____

**Ameet B. Kabrawala, Assistant U.S. Attorney (718-254-6001)**

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------X
                                    :
UNITED STATES OF AMERICA            :
                                    :
                                    :       ORDER
            – against –             :       14 CR 0094 (S-2) (JFB)
                                    :
                                    :
JOSEPH VALERIO,                     :
                                    :
            Defendant.              :
                                    :
------------------------------------X

F I L E D
IN CLERK'S OFFICE
U.S. DISTRICT COURT E.D.N.Y.

★   SEP 08 2014   ★

LONG ISLAND OFFICE

JOSEPH F. BIANCO, District Judge:

     For the reasons set forth in detail on the record on August 26, 2014, as well as in the

Memorandum and Order dated April 1, 2014 (and in the oral rulings on March 6, 2014 and

March 21, 2014), the defendant's renewed oral motion for bail on August 26, 2014 is denied.

                        SO ORDERED.


                        _____
                        JOSEPH F. BIANCO
                        UNITED STATES DISTRICT JUDGE

Dated:      September 8, 2014
            Central Islip, New York

# UNITED STATES DISTRICT COURT
for the
EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| United States of America, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) |
| | ) Case No. 14-CR-94-JFB |
| Joseph Valerio, | ) |
| | ) |
| Defendant. | ) |
| | ) |

## NOTICE OF APPEAL

Notice is hereby given that Joseph Valerio, the defendant in the captioned case, hereby appeals to the United States Court of Appeals for the Second Circuit from the district court's final order denying the defendant's third motion for release from custody, filed on August 26, 2014 (Document No. 58), which followed the defendant's unsuccessful second motion for release from custody (Document No. 20) and the defendant's unsuccessful first motion for release from custody (Document No. 16).

Date: September 7, 2014

*Leonard Lato*
Leonard Lato
Attorney for Defendant
35 Arkay Drive, Suite 200
Hauppauge, NY 11788-3756
Email: leonardlato@yahoo.com
Telephone: (631) 655-5008